# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| TIM A. FISCHELL, ROBERT E. FISCHELL, AND DAVID R. FISCHELL,<br><br>             Plaintiffs,<br><br>vs.<br><br>CORDIS CORPORTATION,<br><br>             Defendant. | Case No. _____<br><br>Hon. _____<br><br>**JURY TRIAL DEMANDED** |

J. Michael Huget (MI P39150)
Jeffrey K. Lamb (MI P76738)
Brittany D. Parling (MI P78870) (admission to
W.D. Mich. pending)
HONIGMAN MILLER SCHWARTZ AND COHN LLP
130 S. First Street, 4th Floor
Ann Arbor, MI 48104
(734) 418-4200
(734) 418-4257 Fax
mhuget@honigman.com
jlamb@honigman.com
bparling@honigman.com
*Attorneys for Plaintiff*

## COMPLAINT

For their Complaint, Plaintiffs Tim, Robert, and David Fischell ("Plaintiffs" or "the Fischells"), by their attorneys Honigman Miller Schwartz and Cohn LLP, state as follows:

### NATURE OF THE ACTION

1. This is an action against Defendant Cordis Corporation ("Cordis") for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duties, fraud, fraudulent concealment, and unjust enrichment for Cordis's failure to protect Plaintiffs' intellectual property rights and failure to pay patent royalties to Plaintiffs for medical

devices manufactured and sold by Cordis's sub-licensees in the United States and in foreign countries from 1999 to the present.

2. The Fischells are entrepreneurs who are identified as the inventors on greater than 100 patents for medical devices, including numerous patents for coronary stent technology. Coronary stents are metal or composite mesh tubes that are inserted into blood vessels to prevent or counteract disease-induced blockages and flow constrictions. In other words, stents help keep blood vessels open and functioning, and prevent heart attacks, aneurysms, and other life-threatening medical events.

3. Defendant Cordis, a subsidiary of Johnson & Johnson, is a leading manufacturer of medical devices, including stents and catheters.

4. In June 1999, the Fischells entered into a patent royalty agreement with Cordis regarding certain of the Fischells' medical device patents (the "June 1999 Agreement"). Pursuant to this Agreement, the Fischells assigned Cordis the rights to exploit certain of their coronary stent patents in order to bring the Fischells' inventions to the marketplace and benefit the public. In exchange, Cordis promised to protect the Fischells' intellectual property rights from infringement and to pay the Fischells royalties for products made, sold, or sub-licensed by Cordis that incorporated the Fischells' patents and other intellectual property, among other promises.

5. Until recently, it appeared to the Fischells that Cordis was honoring its obligations to them pursuant to the June 1999 Agreement. Cordis and/or its sub-licensees Guidant Corporation ("Guidant") and later, Abbott Laboratories ("Abbott"), made regular royalty payments to the Fischells, and Cordis appeared to be fulfilling its obligations to protect the

Fischells' intellectual property rights from infringement, including by filing infringement actions against medical device manufacturers who had not licensed the Fischells' inventions.

6.    This changed in September 2012, when Cordis's sub-licensee Abbott informed Cordis that Abbott would no longer pay royalties to Cordis (for pass-through to the Fischells) for the vast majority of Abbott's coronary stent products.  Despite Plaintiffs' repeated requests that Cordis take action against Abbott, in eighteen months Cordis did nothing other than send two demand letters to Abbott, and Cordis has taken no action at all since June 2013.  Cordis's failure to compel Abbott to pay royalties, or to pay itself the royalties owed to Plaintiffs, has so far deprived Plaintiffs of in excess of $20 million due to them from that one royalty stream alone.

7.    Moreover, Plaintiffs have now discovered that, in addition to its failure to take action against Abbott for its refusal to pay patent royalties since September 2012, Cordis has breached its agreements with Plaintiffs in numerous additional ways and committed other wrongful acts against Plaintiffs, including by: (1) failing to collect or pay royalties for foreign sales of stent products; (2) failing to bring infringement actions against companies that have sold and continue to sell stent products that illicitly practice Plaintiffs' patents; and, critically (3) defrauding Plaintiffs of in excess of $25 million in pre-2004 royalties that Cordis agreed to pay Plaintiffs on Guidant's behalf and never paid.  These additional wrongful acts by Cordis have further deprived Plaintiffs of additional tens of millions of dollars in unpaid patent royalties, which damages continue to accrue.

8.    Altogether Plaintiffs seek damages of not less than $50 million from Cordis for its wrongful conduct.

16600946.4

## PARTIES

9.Plaintiff Tim A. Fischell, M.D., is a resident of Kalamazoo, Michigan. Plaintiff Robert E. Fischell, Ph.D., is a resident of Dayton, Maryland. Plaintiff David R. Fischell, Ph.D., is a resident of Fair Haven, New Jersey.

10.Defendant Cordis Corporation is a Florida corporation with its principal place of business in Fremont, California.

## JURISDICTION & VENUE

11.This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interests and costs.

12.This Court has personal jurisdiction over Cordis under the Michigan "long-arm" statute, because Cordis is a corporation that carries on a continuous and systematic part of its general business within the State of Michigan, MCL 600.711(3), and has also engaged in the transaction of business with Plaintiffs within the State of Michigan, MCL 600.715(1).

13.Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this action occurred within this judicial district.

## FACTUAL BACKGROUND

### *The Fischells License Patents to Cordis*

14.The Fischells filed their first patent application for stent technology in August 1987. Since that time, they have continued to be leading innovators in the stent technology field. At present, the Fischells and the company they founded, IsoStent, LLC, are named as the inventor on greater than forty U.S. patents for coronary stents and stent delivery systems alone.

Stents based on the Fischells' patents have been implanted in greater than five million patients around the world.

15.     In June 1999, the Fischells entered into the June 1999 Agreement with Cordis, pursuant to which the Fischells assigned Cordis several coronary stent patents, including U.S. Patent No. 5,643,312 ("the '312 patent") and its progeny. (Ex. A.)

16.     Pursuant to the June 1999 Agreement, Cordis agreed to pay the Fischells a royalty of one percent (1%) of net sales on each so-called "royalty bearing product" that was "manufactured, used, or sold by Cordis" on a "country-by-country" basis. (*Id*. at ¶ 2.2.)

17.     Cordis also received the exclusive right to initiate legal action against potential infringers of any so-called "royalty bearing patent" the Fischells had assigned to Cordis. (*Id*. at ¶ 2.12.)

18.     Finally, Cordis received the right "[a]s a result of the settlement of a lawsuit or for any other reason," to sub-license any of the Fischells' so-called "royalty bearing patents" to third parties, "as long as the appropriate (1%) royalty was paid" to the Fischells "in accordance with the terms of the Agreement." (*Id*. at ¶ 2.13.)

19.     In December 2001, the Fischells and Cordis entered into another agreement (the "December 2001 Amendment") (Ex. B) that modified the royalty rates set forth in the June 1999 Agreement but otherwise left the June 1999 Agreement in full force and effect.

### *Cordis Sub-Licenses Plaintiffs' Stent Patents to Guidant In Order To Gain Access To Guidant's Balloon Catheter Delivery System*

20.     In late 2002 or early 2003, David Fischell informed Cordis representative Paul Coletti ("Coletti") that certain stents manufactured and sold by Guidant potentially infringed the Fischells' stent patents that had been assigned to Cordis. Coletti promised to investigate this claim.

21. Approximately one year later, during January 24–28, 2004, Coletti contacted Robert Fischell via phone while he and Tim Fischell were attending a conference in Lanai, Hawaii.

22. Coletti informed Robert Fischell that Cordis and Guidant had reached an agreement in principle regarding Guidant's infringement on Plaintiffs' patents that had been assigned to Cordis and that Guidant had agreed to pay royalties to Cordis for pass-through to Plaintiffs going forward.

23. At that time, Plaintiffs inquired whether they would receive royalty payments from Guidant for the stent products Guidant had manufactured prior to entering the agreement with Cordis. Coletti informed Plaintiffs that Cordis had agreed to release Guidant from any obligation to pay royalties for stents manufactured or sold prior to February 2004.

24. Coletti did not, however, inform Plaintiffs at that time, or at any time thereafter, that Cordis and Guidant had actually agreed that *Cordis* would be responsible for paying Plaintiffs royalties for the royalty-bearing stents Guidant had manufactured and sold prior to February 2004. Nor did Cordis ever pay Plaintiffs such royalties.

25. In February 2004, Cordis and Guidant entered a Settlement and Release Agreement ("the Guidant License") pursuant to which Cordis sub-licensed certain of Plaintiffs' patents to Guidant for the manufacture of coronary stents.

26. By virtue of its agreement with Guidant, Cordis gained the rights to sell stents mounted on rapid-exchange balloon catheters, which allowed Cordis's stents to remain competitive in the marketplace and turned out to be enormously successful products for Cordis. Altogether, Cordis's sales of stents incorporating Guidant's rapid-exchange balloon catheters are believed to have generated in excess of $10 billion of revenue for Cordis since 2004.

27. In or around February 2004, Robert Fischell asked Coletti for a copy of the Guidant License. Coletti declined to provide the complete license, asserting that it was confidential and that Cordis could not release the entire document to non-parties, even the Fischells.

28. Instead, on February 22, 2004, Coletti sent Plaintiffs a single page that Coletti asserted was excerpted from the Guidant License. That page confirmed the purported terms of the royalty agreement that Coletti had previously relayed over the phone to the Fischells in Hawaii. Namely, that any "pass through royalties" payable by Guidant through Cordis to Plaintiffs "after the date of execution of this Agreement shall be payable by GUIDANT" and "prior to the date of execution of this Agreement shall be *waived*." (Ex. C (emphasis added).)

29. Relying on Coletti's repeated and consistent oral and written representations that Cordis had waived Plaintiffs' rights to pre-2004 royalties, and that Cordis had made the best deal that it could on Plaintiffs' behalf, Plaintiffs made no further attempts to acquire a complete copy of the Guidant License from Cordis or to pursue royalties from Cordis or Guidant for Guidant's pre-February 2004 sales of royalty-bearing stents.

30. At present, Plaintiffs estimate that royalty payments for Guidant's pre-February 2004 sales of royalty bearing stents would have totaled not less than $25 million.

*Plaintiffs Receive Royalties from Cordis and its*
*Sub-Licensees Guidant and Abbott until Mid-2012*

31. From February 2004 until 2006, Plaintiffs received royalty payments from Cordis for Cordis's and Guidant's sales of coronary stents that employed patents Plaintiffs had licensed to Cordis, including stents from the Vision and Penta stent product families.

32. In January 2006, Guidant sold its cardiology division to Abbott.

16600946.4

33. From then until mid-2012, Abbott paid royalties to Cordis for "pass-through" to Plaintiffs for a portion of Abbott's manufacture and sale of various stents, including the Vision, Xience, and Zeta stents, among others. The pass-through royalties Abbott and Cordis did pay to the Fischells alone totaled approximately $10-15 million annually from 2006–2011.

34. On information and belief, Abbott improperly omitted some sales, particularly foreign sales, of certain royalty bearing stents from its calculation of royalties owed to Plaintiffs.

### *Cordis Fails to Collect or Pay Royalties on Abbott Stents Beginning in 2012*

35. In January 2010, Cordis sued Boston Scientific Corporation ("BSC") in the U.S. District of Delaware for infringement of certain of Plaintiffs' coronary stent patents that Plaintiffs had licensed to Cordis.

36. On June 19, 2012, the District Court granted BSC's motion for summary judgment and held that BSC's Promus stent did not infringe on Plaintiffs' patents (the "June 2012 Order"). Abbott was not a party to the litigation between Cordis and BSC.

37. On September 12, 2012, Abbott informed Cordis via email that based on the June 2012 Order, Abbott would no longer pay royalties to Cordis for Abbott's coronary stent products other than the Zeta bare metal stent. (Ex. D.)

38. At or about this same time, Abbott ceased paying royalties to Cordis owed to Plaintiffs for Abbott's U.S. sales of its Vision and Xience series of coronary stents.

39. Abbott also ceased paying royalties for its foreign sales of stents subject to the Guidant License, even though the foreign patent rights relating to those stents were not in any way a part of the proceedings before the Delaware District Court or in any way subject to that court's jurisdiction.

40. On December 21, 2012, Cordis representative Coletti wrote Abbott and asserted that pursuant to the Guidant License, Cordis and Abbott had agreed that the Vision and Xience stents "*shall be considered royalty-bearing for purposes of the pass-through royalty under the Fischell Patents*." (Ex. E (emphasis in original).)

41. As such, Cordis asserted that Abbott's failure to pay royalties for its sales of Vision and Xience cardiac stents "represent[ed] material non-compliance with the Guidant License." (*Id.*)

42. Nonetheless, Abbott continued to refuse to pay royalties to Cordis for pass-through to Plaintiffs for royalty-bearing stents sold in the U.S. or internationally.

43. Cordis sent one additional follow-up letter to Abbott, but otherwise took no further action to compel Abbott to continue to pay pass-through royalties to Plaintiffs for all of Abbott's sales of royalty-bearing stents, nor did Cordis pay Plaintiffs such royalties despite Cordis's obligation to do so.

44. On May 13, 2013, the United States Court of Appeals for the Federal Circuit affirmed "without opinion" the June 2012 Order in a vague and contradictory two-sentence order.

45. Cordis took no action to seek clarification of the Federal Circuit's May 13, 2013 Order, nor did Cordis seek rehearing en banc of that Order, nor appeal to the United States Supreme Court.

46. Cordis has also failed to bring infringement actions against or seek royalty payments from Abbott, BSC, and other stent manufacturers for their sales of stents—including Abbott's Absorb stent—that infringe on Plaintiffs' U.S. Patent No. 8,157,856 ("the '856 patent") and other patents assigned to Cordis in the June 1999 Agreement, despite Plaintiffs' repeated

requests that Cordis do so. Nor has Cordis paid Plaintiffs royalties for Abbott's use, manufacture, and sale of stent products in violation of the June 1999 Agreement and the Guidant License.

47. Cordis's failure to take these and other actions to protect Plaintiffs' intellectual property rights are additional violations of Cordis's contractual and fiduciary obligations to Plaintiffs and have caused Plaintiffs considerable harm.

### *Plaintiffs Discover Cordis's Fraud*

48. In or about December 2012, Plaintiffs again requested a copy of the Guidant License from Cordis.

49. On December 7, 2012, Cordis again declined to provide Plaintiffs with the complete Guidant License, citing confidentiality concerns. (Ex. D.) Cordis instead provided a purported excerpt from the Guidant License containing "certain definitions." (*Id.*)

50. In or about May 2013, Plaintiffs reviewed for the first time a redacted copy of the "Execution Copy" of the Guidant License filed with the SEC. (Ex. F.)

51. Reviewing the Guidant License for the first time, Plaintiffs learned at that time that Cordis had repeatedly misrepresented to them the critical royalty terms of that agreement.

52. Rather than simply accepting Cordis's purported "waiver" of Plaintiffs' rights to pre-February 2004 royalties, Guidant had protected itself by forcing Cordis to agree that *Cordis*, and not Guidant, would pay royalties to Plaintiffs for Guidant's sales of royalty-bearing stents that predated the Guidant License agreement. (Ex. F at ¶ 2(d).)

53. Cordis never informed Plaintiffs of the fact that it was obligated to pay them royalties for Guidant's pre-February 2004 sales of royalty-bearing stents, nor has Cordis ever paid Plaintiffs such royalties.

10

54. In other words, Cordis illicitly deprived Plaintiffs of not less than $25 million in pre-2004 patent royalties in order to capture for itself at least $10 billion in revenue for stents Cordis sold incorporating Guidant's rapid-exchange balloon catheter technology.

## COUNT I

## BREACH OF CONTRACT

55. Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 – 54 as if fully set forth herein.

56. Plaintiffs and Cordis entered into the June 1999 Agreement and the December 2001 Amendment.

57. Each of the Agreements is governed by the law of the State of New Jersey.

58. Pursuant to the Agreements, Plaintiffs assigned coronary stent patents and related intellectual property rights to Cordis, and Cordis obligated itself to pay royalties on coronary stent products used, manufactured, or sold containing Plaintiffs' intellectual property assigned to Cordis. Cordis also obligated itself to take all necessary steps to protect Plaintiffs' patents from infringement.

59. Plaintiffs at all times performed their obligations under the parties' Agreements.

60. Cordis has breached the parties' Agreements in numerous ways, including without limitation by:

    a. Failing to pay or compel the payment of royalties to Plaintiffs for the foreign sales of Abbott's stent products that make use of Plaintiffs' intellectual property assigned to Cordis;

    b. Failing to pay or compel the payment of royalties to Plaintiffs for Abbott's domestic sales of Vision, Xience, and other stents that make use of the Fischells' intellectual property assigned to Cordis; and

11

      c.      Failing to pay or compel the payment of royalties or prosecute infringement actions based on the '856 patent and other patents assigned to Cordis.

61. Plaintiffs have been damaged as a result of Cordis's breach of contract.

62. Plaintiffs are entitled to recover from Cordis for unpaid royalty payments and other damages caused by Cordis's breach.

## COUNT II

## BREACH OF IMPLIED COVENANT OF GOOD FAITH

63. Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 – 62 as if fully set forth herein.

64. Plaintiffs and Cordis entered into the June 1999 Agreement and the December 2001 Amendment.

65. Each of the Agreements is governed by the law of the State of New Jersey and contains an implied covenant of good faith and fair dealing.

66. As set forth above, pursuant to the Agreements, Plaintiffs gave Cordis the exclusive right to own, use, and control certain of Plaintiffs' patents in exchange for Cordis's promise to pay royalties on the Net Sales of all Royalty Bearing Products made, sold, or licensed by Cordis, among other promises.

67. Pursuant to these same Agreements, Cordis received unfettered discretion to assert claims against the manufacturer or seller of any product that infringed the Plaintiffs' patents subject to the parties' Agreements. Cordis also received unfettered discretion to license Plaintiffs' patents to whomever Cordis chose, without any input from Plaintiffs.

68. Cordis has breached the implied covenant of fair dealing in several ways, including by:

    a.    Depriving Plaintiffs of no less than $25 million in pre-2004 unpaid patent royalties for stent products manufactured by Guidant in order to gain access to Guidant's rapid-exchange balloon catheter technology;

    b.    Failing to pay or compel the payment of royalties to Plaintiffs for the foreign sales of Abbott's stent products that make use of Plaintiffs' intellectual property assigned to Cordis;

    c.    Failing to pay or compel the payment of royalties to Plaintiffs for Abbott's domestic sales of Vision, Xience and other stents that make use of Plaintiffs' intellectual property assigned to Cordis; and

    d.    Failing to pay or compel the payment of royalties or prosecute infringement actions based on the '856 patent and other patents assigned to Cordis.

69. Moreover, Cordis has acted in bad faith by actively concealing the fact that it deprived Plaintiffs of pre-2004 patent royalties for stent products manufactured by Guidant in order to gain access to Guidant's rapid-exchange balloon catheter technology, and by failing to prosecute infringement actions based on the '856 patent and other patents assigned to Cordis despite the validity of those patents and Plaintiffs' repeated requests to Cordis to do so.

70. Plaintiffs have been damaged as a result of Cordis's breach of the implied covenant of good faith and fair dealing.

71. Plaintiffs are entitled to recover from Cordis for unpaid royalty payments and other damages caused by Cordis's breach of the implied covenant of good faith and fair dealing.

## COUNT III

## BREACH OF FIDUCIARY DUTIES

72. Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 – 71 as if fully set forth herein.

73. As set forth above, pursuant to the June 1999 Agreement and December 2001 Agreement, Plaintiffs gave Cordis the exclusive right to own, use, and control certain of

Plaintiffs' patents in exchange for Cordis's promise to pay royalties on the Net Sales of all Royalty Bearing Products made, sold, or licensed by Cordis, among other promises.

74. Pursuant to these same Agreements, Cordis received the exclusive right to assert claims against the manufacturer or seller of any product that infringed Plaintiffs' patents subject to the parties' Agreements. Cordis also received the right to license Plaintiffs' patents to whomever Cordis chose, without any input from Plaintiffs.

75. By virtue of Cordis's unfettered discretion to license Plaintiffs' patents and enforce Plaintiffs' patent rights, Cordis assumed fiduciary duties to Plaintiffs to protect their intellectual property and to ensure that Plaintiffs were paid the royalties they were owed.

76. Cordis has repeatedly breached its fiduciary duties to Plaintiffs by:

   a. Depriving Plaintiffs of no less than $25 million in pre-2004 unpaid patent royalties for stent products manufactured by Guidant in order to gain access to Guidant's rapid-exchange balloon catheter technology;

   b. Failing to pay or compel the payment of royalties to Plaintiffs for the foreign sales of Abbott's stent products that make use of Plaintiffs' intellectual property assigned to Cordis;

   c. Failing to pay or compel the payment of royalties to Plaintiffs for Abbott's domestic sales of Vision, Xience and other stents that make use of Plaintiffs' intellectual property assigned to Cordis; and

   d. Failing to pay or compel the payment of royalties or prosecute infringement actions based on the '856 patent and other patents assigned to Cordis.

77. Plaintiffs have been damaged as a result of Cordis's breach of its fiduciary duties owed to them.

78. Cordis has acted intentionally, willfully, maliciously, and in bad faith, including by actively concealing evidence of its self-dealing at Plaintiffs' expense.

79. Plaintiffs are entitled to recover from Cordis for unpaid royalty payments and other damages, including punitive damages, caused by Cordis's breach of its fiduciary duties.

## COUNT IV

## FRAUD AND FRAUDULENT CONCEALMENT

80. Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 – 79 as if fully set forth herein.

81. As set forth above, in late 2002 or early 2003, David Fischell informed Cordis that certain stents manufactured and sold by Guidant infringed the Fischells' stent patents that had been assigned to Cordis. Cordis promised to investigate.

82. Approximately one year later, during January 24–28, 2004, Cordis informed Plaintiff Robert Fischell that Cordis and Guidant had reached an agreement in principle regarding Guidant's infringement on Plaintiffs' patents and that Guidant had agreed to pay royalties to Cordis for pass-through to Plaintiffs going forward.

83. At that time, Plaintiffs inquired whether they would receive royalty payments from Guidant for the stent products Guidant had manufactured prior to entering the agreement with Cordis. Cordis informed Plaintiffs that Cordis had agreed to release Guidant from any obligation to pay royalties for stents manufactured or sold prior to February 2004.

84. Cordis then knowingly, willfully, and fraudulently misrepresented and omitted that Cordis and Guidant had actually agreed that *Cordis* would be responsible for paying Plaintiffs royalties for the royalty-bearing stents Guidant had manufactured and sold prior to February 2004. Nor did Cordis ever correct this misrepresentation and omission or pay Plaintiffs the royalties Cordis owed.

85. In fact, a short time after the January 2004 call, Cordis took affirmative steps to conceal its fraud by sending to Robert Fischell what Cordis representative Coletti erroneously asserted was an excerpt from the Guidant License.

86. This purported "excerpt" completely misrepresented the terms by which Cordis and Guidant had settled the obligation to pay pre-February 2004 royalties to the Fischells and erroneously asserted that any "pass through royalties" payable by Guidant through Cordis to the Fischells "after the date of execution of this Agreement shall be payable by Guidant" and "prior to the date of execution of this Agreement shall be waived." (Ex. C.)

87. The Fischells relied on Cordis's repeated and consistent oral and written representations that Cordis had waived the Fischells' rights to pre-2004 royalties, and that Cordis had made the best deal that it could on the Fischells' behalf, and did not make further attempts to acquire a complete copy of the Guidant License from Cordis or to pursue royalties from Cordis or Guidant for Guidant's pre-February 2004 sales of royalty-bearing stents.

88. In or about December 2012, after Cordis's sub-licensees ceased paying royalties altogether, the Fischells'—via their counsel—again requested a copy of the Guidant License from Cordis.

89. Cordis representative Coletti actively concealed Cordis's fraud, again declining to provide the Fischells with the complete Guidant License, and again citing confidentiality concerns.

90. In or about May 2013, the Fischells reviewed for the first time the actual "Execution Copy" of the Guidant License filed with the SEC, and learned that Cordis had intentionally and repeatedly misrepresented to them the royalty terms of the Guidant License, to their great harm.

16

91. Cordis intended to deceive the Fischells into believing that their rights to royalty payments for Guidant's pre-February 2004 sales of royalty bearing stents had been waived as a condition of reaching settlement with Guidant and securing royalty payments going forward.

92. Cordis's intent to deceive is shown by Cordis's repeated refusal to provide the Fischells with an unredacted copy of the complete Guidant License, and by the fact that Cordis twice provided the Fischells with purported excerpts of the Guidant License that erroneously showed that the Fischells' rights to royalty payments for Guidant's pre-February 2004 sales of royalty bearing stents had been waived, and omitted that Cordis had obligated itself to pay the Fischells those royalties.

93. Claimants have been damaged as a result of Cordis's fraudulent omissions, conduct, and fraudulent concealment, and are entitled to recover from Cordis for the value of unpaid royalty payments for Guidant's pre-February 2004 sales of royalty bearing stents and other damages caused by Cordis's fraud.

94. Cordis's fraudulent conduct was knowing, willful, malicious, and repeated, and the Fischells are entitled to recover punitive damages for Cordis's fraud.

95. The Fischells' damages as a result of Cordis's fraud alone total not less than $25,000,000, exclusive of punitive damages, interest, costs, and attorneys' fees.

## COUNT V

### UNJUST ENRICHMENT

96. Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 – 95 as if fully set forth herein.

97. Plaintiffs conferred a substantial benefit on Cordis by granting Cordis the right to use and sub-license Plaintiffs' patents and other intellectual property.

98. Cordis then used its contractual right to sub-license Plaintiffs' patents and other intellectual property as a bargaining chip to induce Guidant to provide Cordis the right to use Guidant's rapid-exchange balloon catheters. Guidant's technology was critically important to Cordis as it allowed Cordis's stent products to remain competitive in the marketplace and not become obsolete.

99. On information and belief, Cordis has generated in excess of $10 billion in revenue since 2004 by virtue of its license to use and sub-license Plaintiffs' patents and other intellectual property.

100. Cordis has retained that benefit, but unjustifiably and inequitably has failed to fully compensate Plaintiffs for their patents and other intellectual property, including by failing to collect or pay royalties owed to Plaintiffs for stent products that infringe Plaintiffs' patents licensed to Cordis, and by failing to fulfill its obligation to pay Plaintiffs patent royalties for Guidant's pre-February 2004 sales of royalty bearing stents.

101. It is unjust for Cordis to have received and retain the benefit of the patents and other intellectual property that Plaintiffs licensed to Cordis without compensating Plaintiffs for the full value of their patents and other intellectual property.

16600946.4

WHEREFORE, Plaintiffs respectfully ask that this Court enter judgment in their favor and against Cordis in an amount of not less than $50,000,000, plus punitive damages, interest, costs, expenses, and legal fees, along with such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury of their claims against Cordis.

Respectfully submitted,

HONIGMAN MILLER SCHWARTZ AND COHN LLP

By: /s/ J. Michael Huget
J. Michael Huget (MI P39150)
Jeffrey K. Lamb (MI P76738)
Brittany D. Parling (MI P78870) (admission to W.D. Mich. pending)
130 S. First Street, 4th Floor
Ann Arbor, MI 48104
Phone: (734) 418-4254
Fax: (734) 418-4255
mhuget@honigman.com
jlamb@honigman.com
bparling@honigman.com

Dated:  February 19, 2015