Donald A. Robinson, Esq.
Keith J. Miller, Esq.
ROBINSON MILLER LLC
One Newark Center
Newark, New Jersey  07102
(973) 690-5400
drobinson@rwmlegal.com
kmiller@rwmlegal.com

Harold P. Weinberger, Esq. (*admitted pro hac vice*)
Samantha V. Ettari
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York   10036
(212) 715-9100
hweinberger@kramerlevin.com
settari@kramerlevin.com

*Attorneys for Defendant Cordis Corporation*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

—————————————————————
                                                     :
TIM A. FISCHELL, ROBERT E.          :
FISCHELL, AND DAVID R. FISCHELL,  : Civil Action No. 3:16-cv-0928
                                                     : (PGS)(LHG)
                                                     :
            Plaintiffs,                        :
                                                     : ORAL ARGUMENT REQUESTED
vs.                                                :
                                                     :
CORDIS CORPORATION,              :
                                                     :
            Defendant.                       :
—————————————————————:

## CORDIS CORPORATION'S MEMORANDUM
## IN SUPPORT OF ITS MOTION TO DISMISS

Table of Contents

Page

I.  THE AMENDED COMPLAINT SHOULD BE DISMISSED
    FOR FAILURE TO STATE A CLAIM ...........................................................7

    A.  Standard of Review................................................................................7

    B.  Count I (Breach of Contract) ................................................................9

        1.  Count I identifies no contract provision that Cordis breached..............9

        2.  The Agreement's plain text refutes Count I. ........................................10

            i.  The '99 Agreement does not require Cordis to
                "compel royalties" but, rather, gives Cordis complete
                discretion over enforcement.........................................................10

            ii. The '99 Agreement does not require Cordis to
                keep records of Abbott's unlicensed sales or to
                pay royalties on such sales. ..........................................................12

        3.  Because A Federal Court Held That Abbott's Stents
            Did Not Infringe the Relevant Fischell Patents, No
            Royalties Were Thereafter Due. ..........................................................13

    C.  Count II (Breach of Implied Covenant of Good Faith) ...............................14

        1.  Count II fails to allege that Cordis acted with an
            improper motive. ................................................................................15

        2.  Cordis did not deprive the Fischells of the benefit
            of their bargain..................................................................................17

            i.  Cordis' alleged purpose for settling with Guidant—
                increased sales—was reasonably within the parties'
                contemplation. .............................................................................17

            ii. Cordis' enforcement decisions and royalty payments
                were expressly within the parties' contemplation..........................18

    D.  Count III (Breach of Fiduciary Duties)......................................................19

1.   Count III is barred by the "economic loss doctrine" because it flows directly from the '99 Agreement. ............................19

2.   There was no fiduciary relationship between the parties as exclusive patent licensees are not fiduciaries, and nothing about the '99 Agreement—pleaded or otherwise— could qualify Cordis as one. ................................................21

E.   Count IV (Fraud and Fraudulent Concealment) ..........................................22

1.   Count IV is not pleaded with particularity. .........................................23

2.   Cordis' alleged misrepresentation was not material. ...........................24

   i.   Cordis did not need the Fischells' approval to waive pre-2004 "royalties." .....................................................24

   ii.  The Guidant Settlement actually did waive pre-2004 infringement damages. ................................................25

3.   The Fischells have not adequately pleaded reliance...........................26

4.   The Fischells were not damaged by the alleged misrepresentation. ....27

5.   The Fischells' fraud claim is barred by the economic loss doctrine. ..27

F.   Count V (Unjust Enrichment)....................................................................28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alexander v. CIGNA Corp.*,
  991 F. Supp. 427 (D.N.J. 1998) ................................................................21, 22

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).........................................................1, 7, 9, 17

*Bell Atlantic Corp. v. Twombly.*
  550 U.S. 544 (2009).........................................................................7, 8

*Bioquell, Inc. v. Feinstein*,
  Civ. A. No. 10-2205, 2010 WL 4751709 (E.D. Pa. Nov. 23, 2010) ...................8

*Boardwalk Regency Corp. v. Unite Here Local 54*,
  No. 08-cv-0016, 2009 WL 540675 (D.N.J. Mar. 3, 2009) .................................16

*Bracco Diagnostics Inc. v. Bergen Brunswig Drug Co.*,
  226 F. Supp. 2d 557 (D.N.J. 2002) ....................................................28

*Cordis Corp. v. Boston Scientific Corp.*,
  868 F. Supp. 2d 342 (D. Del. 2012), *aff'd in relevant part*, 504 F.
  App'x 922 (Fed. Cir. 2013) ...........................................................4, 13

*Eprotec Preservation, Inc. v. Engineered Materials, Inc.*,
  No. 10-cv-5097, 2011 WL 867542 (D.N.J. Mar. 9, 2011) ...................................9

*F.G. v. MacDonell*,
  696 A.2d 697 (N.J. 1997) .............................................................21, 22

*Frank v. Dana Corp.*,
  547 F.3d 564 (6th Cir. 2008) .........................................................23, 24

*Gennari v. Weichert Co. Realtors*,
  691 A.2d 350 (N.J. 1997) ...............................................................23

*Glenz v. RCI, LLC*,
  No. 09-cv-378, 2010 WL 323327 (D.N.J. Jan. 20, 2010) .................................20

*Hassler v. Sovereign Bank*,
    644 F. Supp. 2d 509 (D.N.J. 2009), *aff'd*, 374 F. App'x 341 (3d
    Cir. 2010) ...................................................................................................16

*Heidelberg Brewing Co. v. North American Service Co.*,
    26 F. Supp. 342 (E.D. Ky. 1939), *aff'd*, 111 F.2d 897 (6th Cir.
    1940) ..........................................................................................................11

*Longobardi v. Chubb Insurance Co. of New Jersey*,
    582 A.2d 1257 (N.J. 1990) ..................................................................24, 25

*Malleus v. George*,
    641 F.3d 560 (3d Cir. 2011) ...........................................................7, 8

*Manahawkin Convalescent v. O'Neill*,
    85 A.3d 947 (N.J. 2014) .......................................................................10

*McKelvey v. Pierce*,
    800 A.2d 840 (N.J. 2002) ....................................................................19

*New Jersey Bank v. Palladino*,
    389 A.2d 454 (N.J. 1978) ....................................................................14

*Palisades Properties, Inc. v. Brunetti*,
    207 A.2d 522 (1965) ...........................................................................18

*Phillips v. County of Allegheny*,
    515 F.3d 224 (3d Cir. 2008) .................................................................9

*Prima Tek II, LLC. v. A-Roo Co.*,
    222 F.3d 1372 (Fed. Cir. 2000) ....................................................18, 21

*Reuben H. Donnelley Corp. v. Mark I Marketing Corp.*,
    893 F. Supp. 285 (S.D.N.Y. 1995) ......................................................21

*RNC Systems, Inc. v. Modern Technology Group, Inc.*,
    861 F. Supp. 2d 436 (D.N.J. 2012).......................................................9

*Russell-Stanley Corp. v. Plant Industries, Inc.*,
    595 A.2d 534 (N.J. Super. Ct. Ch. Div. 1991) ...................................28

*Saltiel v. GSI Consultants, Inc.*,
    788 A.2d 268 (N.J. 2002) ....................................................................20

*Santiago v. Warminster Township.*,
   629 F.3d 121 (3d Cir. 2010) ............................................................................7, 8

*Sons of Thunder, Inc. v. Borden, Inc.*,
   690 A.2d 575 (N.J. 1997) ...................................................................................14

*State Capital Title & Abstract Co. v. Pappas Business Services, LLC*,
   646 F. Supp. 2d 668 (D.N.J. 2009).....................................................................28

*United States v. Youngstown Sheet & Tube Co.*,
   171 F.2d 103 (6th Cir. 1948) ...............................................................................12

*Universal Oil Products Co. v. Vickers Petroleum Co. of Delaware*,
   19 A.2d 727 (Del. Super. Ct. 1941) .....................................................................25

*Wang Laboratories, Inc. v. Ma Laboratories, Inc.*,
   1995 WL 729298 (N.D. Cal. December 1, 1995.)................................................14

*Water Technologies Corp. v. Calco, Ltd.*,
   576 F. Supp. 767 (N.D. Ill. 1983).......................................................................11

*Weingarten v. Weingarten*,
   560 A.2d 1243 (N.J. Super. Ct. App. Div. 1989) ...............................................26

*Wilson v. Amerada Hess Corp.*,
   773 A.2d 1121 (N.J. 2001) ............................................................14, 15, 16, 17

*Winslow v. Corporate Express, Inc.*,
   834 A.2d 1037 (N.J. Super. Ct. App. Div. 2003) ...............................................29

*Wong v. Wells Fargo Bank N.A.*,
   No. 14-cv-5204(CCC), 2015 WL 6164036 (D.N.J. Oct. 20, 2015) .......19, 20, 27

*Young v. Johnson & Johnson*,
   No. 11-4580(JAP), 2012 WL 1372286 (D.N.J. Apr. 19, 2012) ..........................2

Defendant Cordis Corporation ("Cordis") respectfully submits this memorandum in support of its Motion to Dismiss the May 14, 2015 Amended Complaint of Plaintiffs Tim A. Fischell, Robert E. Fischell and David R. Fischell (collectively, the "Fischells") (ECF Dkt. No. 1), pursuant to Federal Rule of Civil Procedure 12(b)6.[1]

## PRELIMINARY STATEMENT

In this action, the Fischells seek to recover damages in an amount not less than $65 million plus punitive damages and related relief.  All of their claims relate, in one way or another, to a contract between the Fischells and Cordis concerning the licensing of certain patents.  As is shown below, the five purported counts in their Amended Complaint (the "Compl.") fail to state a claim upon which relief should be granted because they do not plead facts that plausibly state a claim for relief, are premised on allegations conclusively rebutted by the agreement at issue, or are predicated on flawed legal theories.

## FACTUAL BACKGROUND

Because the Court accepts the allegations in the Amended Complaint as true for the purposes of this motion, *see Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the facts provided below are based on those allegations and provisions of the

---

[1]   This action was originally filed in the United States District Court for the Western District of Michigan and was transferred to this District, on Cordis' motion, by Order dated February 18, 2016 (ECF Dkt. No. 12).

agreement at issue and related documents, which are annexed as exhibits or referred to in the Amended Complaint.[2]

In 1999, the parties entered into an agreement involving patents directed to coronary stents (the "'99 Agreement"). Under the '99 Agreement, the Fischells assigned Cordis certain patents (the "Fischell Patents") in exchange for a 1% royalty on sales of stents practicing the patents. *See* Compl. ¶¶ 15, 16, 20 and Ex. A. The '99 Agreement provides that in the event either party learns of any product or activity on the part of a third party "that involves infringement of any ROYALTY BEARING PATENT," they shall promptly inform the other party and that "Cordis may, in its discretion, take whatever legal action it believes to be necessary against such third party." Compl. ¶ 17 and Ex. A at § 2.12. Pursuant to § 2.13, Cordis was given "the right to sublicense any of the ROYALTY BEARING PATENTS to a third party as long as the appropriate one (1%) percent ROYALTY is paid to the FISCHELLS in accordance with the terms of the AGREEMENT." Compl. ¶ 18 and Ex. A at § 2.13. Cordis was also required to maintain records of sales subject to payment of royalties and provide the Fischells with "a written report setting forth the amount of royalty accrued based on such sales." Compl. ¶ 19 and Ex. A § 2.5.

---

[2]   The Court may consider documents attached to or relied on by the Fischells in the Amended Complaint. *Young v. Johnson & Johnson*, No. 11-4580(JAP), 2012 WL 1372286, at * 3 n.3 (D.N.J. Apr. 19, 2012).

In 2001, the '99 Agreement was amended to modify the royalty rates (the '01 Amendment"). Compl. Ex. B. In all other respects, the '01 Amendment left the '99 Agreement intact. Compl ¶ 20.

In late 2002 or early 2003, Cordis learned that Guidant Corporation was potentially infringing certain of the Fischell Patents. *Id.* ¶ 21. Cordis and Guidant resolved this and other disputes through a cross-licensing of technologies in a Settlement and Release Agreement dated February 24, 2004 (the "Guidant Settlement"), which included a sublicense of certain Fischell Patents. *Id.* ¶¶ 26–27; Declaration of Harold Weinberger dated March 17, 2016 ("Weinberger Decl."), Ex. 1. This allowed Guidant to practice the Fischell Patents so long as it paid "pass-through" royalties to the Fischells on future sales of certain products. Compl. ¶¶ 23, 26, Weinberger Decl. Ex. 1 § 2(d). The Guidant Settlement also provided that any "pass- through" royalties payable by Guidant prior to the date of the Guidant Settlement "shall be waived and, if payable, paid by CORDIS." *Id.* The Fischells claim that this provision required Cordis to pay such pre-2004 royalties itself and that Cordis failed to disclose that to the Fischells at the time the Guidant Settlement was executed. The Guidant Settlement also gave Cordis the right to sell its stents mounted on Guidant's rapid-exchange balloon catheters, which the Fischells allege "allowed Cordis' stents to remain competitive in the marketplace…." Compl. ¶ 27.

3

In 2006, Abbott Laboratories purchased Guidant's cardiology division. Compl. ¶ 33. From then until mid-2012, Abbott paid the Fischells approximately $10-15 million annually for "pass-through" royalties. *Id.* ¶ 34. The Fischells allege that during this period, Abbott omitted some sales, particularly foreign sales and sales by Abbott to Boston Scientific Corporation and other resellers, from its royalties calculations. *Id.* ¶¶ 33-37. In any event, Abbott stopped paying royalties altogether on its Vision and Xience coronary stents after a District Court found, on June 19, 2012, later affirmed by the Federal Circuit, that Promus coronary stents supplied by Abbott and being sold by Boston Scientific Corporation ("Boston Scientific"), which apparently employed the same technology as Vision and Xience, did not infringe the relevant Fischell Patents. *See Cordis v. Bos. Scientific*, 868 F. Supp. 2d 342, 358 (D. Del. 2012), *aff'd in relevant part*, 504 F. App'x 922 (Fed. Cir. 2013); Compl. ¶¶ 41-44.

Based on these allegations, the Fischells assert five purported counts in the Amended Complaint.

Count I alleges that Cordis breached the Agreements by failing to pay or compel the payment by Abbott of (i) royalties on certain foreign sales of Abbott's stent products that make use of the Fischell patents; (ii) royalties for Abbott's domestic sales of certain stents that make use of the Fischells' intellectual property assigned to Cordis in the Agreement; and (iii) royalties on sales made by

4

Abbott of stents to Boston Scientific and other resellers.  The Fischells also allege that Cordis breached the Agreements by failing to deliver written reports setting forth the amount of royalties payable to them from these Abbott sales. Compl.  ¶¶ 62-69.

Count II alleges that Cordis breached an implied covenant of good faith and fair dealing in the Agreements by failing to perform the above-described acts.  The Fischells further allege that Cordis acted "in bad faith by actively concealing that it deprived [the Fischells] of pre-2004 patent royalties for stent products manufactured by Guidant in order to gain access to Guidant's rapid-exchange balloon catheter technology.  Compl. ¶¶ 71-79.

Count III alleges that "[b]y virtue of Cordis' unfettered discretion to license [the Fischell's] patents," Cordis assumed fiduciary duties to the Fischells and that such duties were breached by the same acts or omissions pleaded in the first two counts of the Amended Complaint.  In connection with this count, the Amended Complaint further alleges that "Cordis has acted intentionally, willfully, maliciously, and in bad faith, including by actively concealing evidence of its self-dealing at [the Fischells'] expense."  Compl. ¶¶ 81-88.

Count IV attempts to plead a claim for "fraud and fraudulent concealment."  The Fischells allege that Cordis fraudulently misrepresented that Cordis had released Guidant from any obligation to pay royalties for sales prior to

5

February, 2004 when in actuality, they claim, the Guidant Settlement required Cordis to pay such royalties.  The Fischells allege that they relied on these representations in not seeking a copy of the actual agreement and have been damaged to the extent of the royalties that would have been due from Guidant.  Compl. ¶¶ 90-104.

Finally, Count V purports to assert a claim for unjust enrichment. This claim is predicated on the allegations that Cordis used its rights to sublicense the Fischell patents to secure the right from Guidant to use Guidant's rapid exchange balloon catheter and that Cordis generated billions in revenue from use of that catheter while failing to fully compensate the Fischells for royalties, as pleaded in earlier counts.  Compl. ¶¶ 106-110.

Based on these claims, the Fischells seek a judgment in an amount of not less than $65 million, plus punitive damages, interest, costs and legal fees. The Amended Complaint also asks the court to "[o]rder an audit of Cordis's books and records to ascertain the amount of sales of royalty-bearing stents in connection with" the Agreements.  Compl. ¶ 110.

# ARGUMENT

## I. THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

### A. Standard of Review

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a plaintiff need not plead detailed factual allegations, the Supreme Court made clear in *Bell Atlantic Corp. v. Twombly* that it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." 550 U.S. 544, 555 (2007). In 2009, the Supreme Court again made clear that conclusory or "bare-bones" allegations will not survive a motion to dismiss: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

In accordance with *Twombly* and *Iqbal*, courts in this Circuit conduct a three-part analysis when presented with a motion to dismiss for failure to state a claim. First, the court must "identify[] the elements of the claim." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011); *see also Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) ("First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'") (quoting *Iqbal,* 129 S. Ct. at 1947). Second, the court should "review[] the complaint to strike . . . allegations" that, "because they are no more than conclusions, are not entitled to the assumption

of truth." *Malleus,* 641 F.3d at 563 (quoting *Iqbal,* 129 St. Ct. at 1950). Although the court must accept all factual allegations as true when considering a motion to dismiss, this rule does not apply to a legal conclusion that is "couched as a factual allegation." *Twombly,* 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court "also disregard[s] 'naked assertions devoid of further factual enhancement' and 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Santiago*, 629 F.3d at 131 (quoting *Iqbal*, 129 S. Ct. at 1949); *see also Bioquell, Inc. v. Feinstein*, Civ. A. No. 10-2205, 2010 WL 4751709, at *4 (E.D. Pa. Nov. 23, 2010) ("While a court will accept well-pled allegations as true for the purposes of the [12(b)(6)] motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations.") (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Lastly, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Santiago,* 629 F.3d at 130 (quoting *Iqbal,* 129 S. Ct. at 1950).

In order to satisfy this standard, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 132 (quotations and citation omitted). In other words, a complaint must do more than simply allege the plaintiff's

entitlement to relief; it must "show" such an entitlement with its facts. *See Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 234-35 (3d Cir. 2008). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal,* 129 S. Ct. at 1950 (quoting to Fed. R. Civ. P. 8(a)(2)).

### B. Count I (Breach of Contract)

Under New Jersey law, a breach of contract claim has three elements: (1) the existence of a valid contract, (2) a breach of that contract, and (3) damages.[3] *RNC Sys., Inc. v. Modern Tech. Grp., Inc.*, 861 F. Supp. 2d 436, 444-45 (D.N.J. 2012). Count I fails to meet element two (breach) because it (i) does not identify any contractual provisions that Cordis allegedly breached and (ii) is contradicted by the express terms of the parties' agreements.

#### 1. Count I identifies no contract provision that Cordis breached.

"Under New Jersey law, a complaint alleging breach of contract must, at a minimum, identify the contracts and provisions breached." *Eprotec Pres., Inc. v. Engineered Materials, Inc.*, No. 10-cv-5097, 2011 WL 867542, at *8 (D.N.J. Mar. 9, 2011) (citation omitted). "Failure to allege the specific provisions of contracts breached is grounds for dismissal." *Id.* (citation omitted). Here, Count I

---

[3]   Under the '99 Agreement's Choice of Law provision, this dispute is governed by New Jersey law. Compl. ¶ 63 and Ex. A § 6.10.

alleges that Cordis had obligations such as a duty to "compel" royalties from Abbott, *see* Compl. ¶ 66, but it does not specify the provisions that gave rise to these obligations (as explained below, none exist). Count I must therefore be dismissed.

### 2.  The Agreement's plain text refutes Count I.

The failure of the Fischells to identify a contractual provision they claim was breached is not a correctable flaw.  The '99 Agreement not only does not contain any obligations on Cordis' part to sue third parties like Abbott or to pay royalties on their behalf, it says the opposite.

### i.  The '99 Agreement does not require Cordis to "compel royalties" but, rather, gives Cordis complete discretion over enforcement.

The notion that Cordis was ever obligated to sue Abbott is contradicted both by the '99 Agreement's plain text and by settled principles of law. Where contractual language "is plain and capable of legal construction, the language alone must determine the agreement's force and effect." *Manahawkin Convalescent v. O'Neill*, 85 A.3d 947, 958–59 (N.J. 2014) (citations and internal quotation marks omitted). Here, Section 2.12 of the '99 Agreement is the only provision pertaining to unauthorized use of the Fischell patents by a third party. It states that "CORDIS *may*, *in its discretion*, take *whatever action it believes to be necessary* against such third party."  Compl. Ex. A § 2.12 (emphasis added). It is

impossible to read within this language an obligation for Cordis to "compel" anything from anyone.

Such an obligation also cannot be implied. It is a "settled point of law" that "there is no implied agreement by a licensor to protect the licensee by suing infringers." *Water Techs. Corp. v. Calco, Ltd.*, 576 F. Supp. 767, 772 (N.D. Ill. 1983) (citing Deller's Walker on Patents § 406 (2d ed. 1965) (dismissing a breach of contract claim based on a failure to sue an infringer because the patent license agreement contained no express provision requiring such suits); *see also Heidelberg Brewing Co. v. N. Am. Serv. Co.*, 26 F. Supp. 342, 343 (E.D. Ky. 1939), *aff'd*, 111 F.2d 897 (6th Cir. 1940) (rejecting a similar breach of contract claim and stating that, an exclusive patent license, "with nothing more, falls far short of showing that the defendant guaranteed to prohibit persons over whom it had no control from infringing upon its patents or warranted that it would protect plaintiff's exclusive use against all the world." (citing *Martin v. New Trin. Lake Asphalt Co.*, 255 F. 93 (D.N.J. 1919)).

Absent a provision in the '99 Agreement showing that Cordis affirmatively agreed to take legal action against anyone, it could not breach by failing to do so. Because there is no such express provision and none can be implied, the Fischells' claim for breach of contract on this basis must be dismissed.

### ii. The '99 Agreement does not require Cordis to keep records of Abbott's unlicensed sales or to pay royalties on such sales.

The portion of Count I that alleges that Cordis breached because it failed to keep records and itself pay royalties for Abbott's unlicensed sales must also be dismissed. Once again the '99 Agreement, case law, and common sense say otherwise.

Starting again with the plain text, Section 2.13 is the sole provision dealing directly with sublicensing.  As noted, it says that "CORDIS shall have the right to sublicense any of the [Fischell Patents] to a third party as long as the appropriate 1% ROYALTY is paid to the FISCHELLS in accordance with the terms of the AGREEMENT."  Compl. Ex. A § 2.13. This language seems clear: a royalty must be paid for any sales under a sublicense.  What it does not say, however, is that *Cordis* must step in and pay royalties when a sublicensee *violates* its sublicense by making unauthorized sales.

Moreover, "royalties," by definition, are payable only where property is used lawfully under a license, which is not what Abbott is claimed to be doing here. Compl. ¶¶ 6, 35–38, 42–48, 50–51; *see also United States v. Youngstown Sheet & Tube Co.*, 171 F.2d 103, 111 (6th Cir. 1948) ("The word 'royalty' commonly imports payment for permissive or lawful use of a property right, and not damages for a pirated or illegal appropriation of such property right." (citation

12

and internal quotation marks omitted)).  Abbott did not report the sales at issue and thereby asserted that royalties were not due.  Accordingly, any claim against it would be for infringement.

Finally, charging Cordis for Abbott's alleged unauthorized sales would be unworkable as a matter of practical reality.  Cordis is required to keep records of sales on which royalties are payable—which the Fischells are permitted to audit—and to provide reports on such sales along with payments to the Fischells.  Compl. ¶ 19 and Ex. A §§ 2.5, 2.6. Cordis could not have met these obligations if it were responsible for Abbott's unlicensed sales, because it has no access to Abbott's sales records.   The Fischells' interpretation of the '99 Agreement thus cannot be correct.

### 3. Because A Federal Court Held That Abbott's Stents Did Not Infringe the Relevant Fischell Patents, No Royalties Were Thereafter Due.

On 2012, Delaware Federal District Court Judge Sue L. Robinson held, on a motion for summary judgment, that Abbott's stents, which as noted were also being sold by Boston Scientific, did not infringe the relevant Fischell Patents. *See Cordis v. Bos. Scientific*, 868 F. Supp. 2d 342, 358 (D. Del. 2012); *see also* Compl. ¶¶ 41-44.  This decision was affirmed in relevant part by the Federal Circuit a year later.  504 F. App'x 922 (Fed. Cir. 2013).  As a result, Abbott did not owe any royalties for subsequent sales of its Vision and Xience stents, nor could

Cordis obtain infringement damages for these sales. *See, e.g., Wang Laboratories, Inc. v. Ma Laboratories, Inc.,* 1995 WL 729298, at *5 (N.D. Cal. December 1, 1995.)  Accordingly, to the extent plaintiffs' claims for breach of contract relate to those stents for the period after June 19, 2012, they should be dismissed on this separate ground.

### C. Count II (Breach of Implied Covenant of Good Faith)

Count II claims that Cordis also violated New Jersey's implied covenant of good faith and fair dealing.  "[E]very contract in New Jersey contains an implied covenant of good faith and fair dealing." *Sons of Thunder, Inc. v. Borden, Inc.*, 690 A.2d 575, 587 (N.J. 1997) (citations omitted).  The covenant includes terms that "the parties must have intended . . . because they are necessary to give business efficacy to the contract." *N.J. Bank v. Palladino*, 389 A.2d 454, 461 (N.J. 1978) (citation omitted). And courts "must respect and give effect to the parties' bargain as expressed in the contract," including any discretion bargained for in the contract. *Wilson v. Amerada Hess Corp.*, 773 A.2d 1121, 1129–30 (N.J. 2001) (citation omitted).  A party "breaches the duty of good faith and fair dealing if that party exercises its discretionary authority arbitrarily, unreasonably, or capriciously, with the objective of preventing the other party from receiving its reasonably expected fruits under the contract." *Id*. at 1130. Still, a court "must recognize the mutuality of expectation and enforce a party's contractual right to

exercise discretion . . . based on its own reasonable beliefs concerning business strategy." *Id.* A plaintiff must therefore allege that the defendant had an improper motive. *Id.*

Count II fails both because it does not allege that (1) Cordis acted with an improper motive, or (2) that Cordis denied the Fischells the reasonably expected fruits of their agreement.

## 1. Count II fails to allege that Cordis acted with an improper motive.

Count II does not plead that Cordis acted with an improper motive towards the Fischells.  "[A]n allegation of bad faith or unfair dealing should not be permitted to be advanced in the abstract and absent an improper motive.  Without bad motive or intention, discretionary decisions that happen to result in economic disadvantage to the other party are of no legal significance."  *Id.* at 1131 (citations omitted).  Here, for four out of Cordis' five alleged breaches of the implied covenant), Count II pleads no alleged motive at all, simply asserting that Cordis acted in bad faith by not compelling Abbott to pay royalties or to pay them itself. *See* Compl. ¶¶ 75(b)–(e), 80.

For the fifth allegation, the Fischells allege that Cordis was motivated to conceal the terms of the Guidant Settlement in order to gain access to Guidant's balloon catheter technology.  But that is not an improper motive under New Jersey law.  "[C]ontract law does not require parties to behave altruistically toward each

15

other; it does not proceed on the philosophy that I am my brother's keeper." *Wilson*, 773 A.2d at 1130 (citations and internal quotation marks omitted). Thus, a plaintiff cannot "allege merely that its contractual partner exercised the discretion expressly afforded to it under the agreement to serve [its own] financial interests, or to maximize [its] profits, and that this decision worked to disadvantage the complaining party." *Hassler v. Sovereign Bank*, 644 F. Supp. 2d 509, 519 (D.N.J. 2009), *aff'd*, 374 F. App'x 341 (3d Cir. 2010) (citations and internal quotation marks omitted) (alterations in original). Rather, an improper motive is one that seeks "to destroy unilaterally the other's expectations *without legitimate purpose*," such as "intending to destroy plaintiffs economically."  *Wilson*, 773 A.2d at 1130–31 (emphasis added). "Thus, while a party that 'exercises its discretionary authority arbitrarily, unreasonably, or capriciously, *with the objective* of preventing the other party from receiving its reasonably expected fruits under the contract,' breaches the covenant of good faith, a party that exercises its discretion in order to further its own business interests without seeking intentionally to injure its contractual partner does not."  *Boardwalk Regency Corp. v. Unite Here Local 54*, No. 08-cv-0016, 2009 WL 540675, at *8 (D.N.J. Mar. 3, 2009) (quoting *Wilson*, 773 A.2d at 1130) (emphasis in *Boardwalk Regency*).

Here, Cordis is alleged to have deprived the Fischells of at least $25 million in "royalties" in settling with Guidant because Cordis wanted access to

technology that would help it sell more stents (seemingly a good thing for the Fischells).   Compl. ¶ 76.   True or false, a motive of increased sales is not one intended to intentionally injure the Fischells or destroy their expectations.   Thus, Count II fails.

### 2.  Cordis did not deprive the Fischells of the benefit of their bargain.

Count II also fails because it does not allege that any of Cordis' alleged actions were outside the range of risks the Fischells assumed under the '99 Agreement.  *Wilson*, 773 A.2d at 1130. Nor could the Fischells have reasonably made such a claim, based on the facts.

### i.  Cordis' alleged purpose for settling with Guidant—increased sales—was reasonably within the parties' contemplation.

Not only was Cordis' alleged purpose of increasing sales in settling with Guidant permissible under New Jersey law, it must also have been within the Fischells' contemplation under the '99 Agreement.  The Fischells knew going into the '99 Agreement that Cordis was a for-profit enterprise, so they must have contemplated that Cordis might use its unlimited enforcement discretion to further its own business interests.  *Iqbal*, 556 U.S. at 681 (requiring that factual allegations "plausibly suggest an entitlement to relief").

### ii. Cordis' enforcement decisions and royalty payments were expressly within the parties' contemplation.

As to the Fischells' claim that Cordis breached the implied covenant by not paying or compelling royalties from Abbott (*see* Compl. ¶ 75(b)–(d)), the '99 Agreement expressly grants Cordis complete discretion over legal actions to protect the patents, in return for royalty payments where Cordis or its sublicensees use the patents. Compl. Ex. A §§ 2.12, 2.13. The Fischells must have contemplated that Cordis might use its bargained-for discretion before suing third parties, and that it would only pay royalties for its own sales or ensure that royalties were passed on for its sublicensees' licensed sales. Thus, the implied covenant was not violated.

Indeed, applying the implied covenant to erase Cordis' discretion or to expand its royalty obligations would do exactly what the implied covenant prohibits. *Palisades Props., Inc. v. Brunetti*, 207 A.2d 522, 531 (1965) ("In every contract there is an implied covenant that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'") (quoting 4 Williston on Contracts § 610B (3d ed. 1961)). It would also upend an established principle of patent law. A patent "assignment," by definition, comes with "all substantial rights" in the patent, including exclusive enforcement and sublicensing rights. *Prima Tek II, L.L.C. v.*

18

*A-Roo Co.*, 222 F.3d 1372, 1379– 80 (Fed. Cir. 2000).  Thus, by definition, when the Fischells "assigned" Cordis their patents, Compl. ¶¶ 15, Cordis *must* have received exclusive enforcement and sublicensing rights. The Fischells' position would turn these rights into duties by obligating sublicensors to sue or pay royalties for their sublicensees' unlicensed sales.  Such obligations should not be read into a patent assignment unless the parties put them there.

### D. Count III (Breach of Fiduciary Duties)

Count III claims that Cordis' rights under the '99 Agreement came with fiduciary obligations, which Cordis is alleged to have breached. Under New Jersey law, a party may be liable to another for harm resulting from a breach of duties imposed by the existence of a fiduciary relationship between the parties. *See McKelvey v. Pierce*, 800 A.2d 840, 859–60 (N.J. 2002).  A breach of fiduciary claim requires (1) the existence of a fiduciary relationship between the parties, (2) a breach of that duty, and (3) damages. *Id.* (citations omitted).

Count III fails first because it attempts to transform a breach of contract claim into a tort claim and second because the parties were not fiduciaries.

#### 1. Count III is barred by the "economic loss doctrine" because it flows directly from the '99 Agreement.

Count III rebrands the Fischells' contract claims as a tort, which is not allowed. New Jersey's economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract[.]"

19

*Wong v. Wells Fargo Bank N.A.*, Case No. 14-cv-5204(CCC), 2015 WL 6164036, at *3 (D.N.J. Oct. 20, 2015) (breach of fiduciary and other claims dismissed with prejudice because barred by the economic loss doctrine (citing *Duquesne Light Co. v. Westinghouse Elec. Co.*, 66 F.3d 604, 618 (3d Cir. 1995)).  "Under New Jersey law, a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law."  *Saltiel v. GSI Consultants, Inc.*, 788 A.2d 268, 280 (N.J. 2002) (citations omitted).  Thus, a breach of fiduciary duty claim that flows from a contract is properly dismissed under the economic loss doctrine.  *Id.* (rejecting a breach of fiduciary duty claim because, "[i]rrespective of the terminology used in the complaint, . . . this case is essentially a basic breach of contract case, and . . . plaintiff, through her tort allegations, simply is seeking to enhance the benefit of the bargain she contracted for") (citation omitted); *Glenz v. RCI, LLC*, No. 09-cv-378, 2010 WL 323327, at *5 (D.N.J. Jan. 20, 2010) ("Plaintiff's breach of fiduciary duty claim is barred by the economic loss doctrine because it flows directly from the parties' contract.").

Here, Count III flows directly from the '99 Agreement.  *See* Compl. ¶¶ 81–83 (citing the agreements as the source of Cordis' alleged duties).  It seeks to tack punitive damages onto the penalty for Cordis' alleged breach of contract.  *Compare id*. ¶¶ 84, 87 (seeking punitive damages for alleged breaches of fiduciary duty), *with id.* ¶ 66 (alleged breaches of contract), *and id.* ¶ 75 (alleged breaches of

20

implied covenant of fair dealing).  It is therefore improper under the economic loss

doctrine.

> **2. There was no fiduciary relationship between the parties as exclusive patent licensees are not fiduciaries, and nothing about the '99 Agreement—pleaded or otherwise—could qualify Cordis as one.**

The Fischells claim that, in being granted exclusive licensing rights,

"Cordis assumed fiduciary duties to Plaintiffs to protect their intellectual property

and to ensure that Plaintiffs were paid the royalties they were owed."  Compl. ¶ 83.

We know of no precedent for such a claim. No court, to our knowledge, has ever

recognized that exclusive licensing authority gives rise to fiduciary duties; indeed,

available precedent suggests the opposite.  *See Reuben H. Donnelley Corp. v. Mark*

*I Mktg. Corp.*, 893 F. Supp. 285, 289 (S.D.N.Y. 1995) (in a patent case, stating that

"New York law holds . . . an arms-length licensor/licensee type relationship,

without more, is not fiduciary in nature." (citations omitted)).  Because *every*

patent assignment comes with exclusive licensing rights (*Prima Tex II*, 222 F.3d at

1379–80), if that were to create fiduciary duties then all exclusive patent licensees

would be fiduciaries.

There was no fiduciary relationship in this case.  "[F]iduciary duties

are not imposed in ordinary commercial business transactions."  *Alexander v.*

*CIGNA Corp.*, 991 F. Supp. 427, 438 (D.N.J. 1998) (citations omitted).  Rather, a

fiduciary relationship is created only when one party "is under a duty to act for or

give advice for the benefit of another on matters within the scope of their relationship." *F.G. v. MacDonell*, 696 A.2d 697, 704 (N.J. 1997) (citations omitted). "The essence of a fiduciary relationship is that one party places trust and confidence in another who is in a dominant or superior position." *Id.* at 703–04. Thus, a fiduciary relationship is not created where the parties dealt on equal terms. *See Alexander*, 991 F. Supp. at 437 (citing *In re Stroming's Will*, 79 A.2d 492 (N.J. Super. Ct. App. Div. 1951)).

The Fischells have pleaded no facts showing that they entered into the '99 Agreement after placing "trust and confidence" in Cordis, that Cordis was in a dominant or superior position or, critically, that the '99 Agreement was made primarily for their benefit. Nor could they. Again, the '99 Agreement gave Cordis "unfettered" licensing discretion. Compl. ¶¶ 74, 83 and Ex. A § 2.13. It never hinted that this discretion came with super-contractual duties to place the Fischells' interests ahead of Cordis' own interests and business judgment. Instead, the '99 Agreement precludes the existence of representations or duties beyond those "expressly contained" in its text. *See* Ex. A § 6.8.

### E. Count IV (Fraud and Fraudulent Concealment)

Count IV arises from Cordis' 2004 settlement agreement with Guidant. The Fischells allege that they were misled into believing that Cordis had waived the Fischells' right to pre-2004 "royalties" from Guidant when, in fact,

Cordis had assumed liability for such royalties.  Compl. ¶¶ 92–94.  The elements of fraud in New Jersey are: (1) material misrepresentation of a presently existing or past fact, or deliberate suppression of a material fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance by the other person; and (5) damages. *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997) (citation omitted).

Count IV fails for five reasons.  First, it is not pleaded with the particularity required by Fed. R. Civ. P. 9(b).  Second, Cordis' alleged misrepresentation would not have been material.  Third, the Fischells have not adequately pleaded that they relied on Cordis' alleged misrepresentation.  Fourth, the Fischells cannot show damages based on the alleged misrepresentation. Finally, because this tort claim arises from Cordis' performance of the '99 Agreement, it is again barred by the economic loss doctrine.

### 1.  Count IV is not pleaded with particularity.

Count IV rests on a claim that Cordis misrepresented that it "had made the best deal that it could" on the Fischells' behalf when it agreed to waive pre-2004 "royalties" from Guidant.  Compl. ¶¶ 30, 96. No further details are provided regarding this alleged misrepresentation.  This does not satisfy the requirement to plead fraud "with particularity."  Fed. R. Civ. P. 9(b).  Rather, the Fischells "must (1) specify the statements that the plaintiff contends were

fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008) (citation and internal quotation marks omitted). While the Fischells have alleged that a particular Cordis employee—Paul Coletti— told them at specific times and places that Cordis had waived rights to pre-2004 royalties, *see* Compl. ¶¶ 21–25, 28–30, no such details are provided for the supposed "best deal" misrepresentation. It therefore cannot serve as a basis for a fraud claim.

### 2. Cordis' alleged misrepresentation was not material.

Even if Cordis misrepresented the terms of its settlement with Guidant, any such misrepresentation was immaterial. Cordis did not need the Fischells' approval to waive pre-2004 infringement claims, and the omitted contractual language gave the Fischells no rights.

### i. Cordis did not need the Fischells' approval to waive pre-2004 "royalties."

Cordis's alleged misrepresentation about having waived pre-2004 infringement claims could not have been material because Cordis did not need the Fischells' approval to waive the claims. Indeed the Fischells nowhere plead that the alleged misrepresentation was made to obtain their approval or resulted in their giving approval to the settlement. A representation is "material" if the plaintiff "would have considered the misrepresented fact relevant to its concerns and

24

important in determining its course of action." *Longobardi v. Chubb Ins. Co. of N.J.*, 582 A.2d 1257, 1263 (N.J. 1990) (citations omitted). Here, Cordis had complete, *exclusive* licensing and enforcement rights and discretion, and therefore could have waived infringement damages with or without the Fischells' approval. Compl. ¶¶ 17, 73–74, 81; Ex. A §§ 2.12, 2.13. Because the Fischells' approval was unnecessary, any misrepresentations allegedly made to gain the Fischells' approval for the Guidant Settlement would have been immaterial.

### ii. The Guidant Settlement actually did waive pre-2004 infringement damages.

Cordis's alleged misrepresentations were also immaterial because no pre-2004 "royalties" would have been payable under the Guidant Settlement.[4] The Fischells claim "that Cordis and Guidant had actually agreed that Cordis would be responsible for paying Plaintiffs royalties for the royalty-bearing stents Guidant had manufactured and sold prior to February 2004." *Id.* ¶ 93 (emphasis omitted).

---

[4]  Though the Amended Complaint and Guidant Settlement use the terms loosely, any money owed for infringement of the Fischell Patents before the Guidant Settlement would be infringement damages, not "royalties." Again, "royalties" are payable only for lawful uses of a patent (*e.g.*, under a license), while damages are for unlawful uses, as alleged here. *See* pp. 12-13, *supra*. Moreover, a patent license cannot retroactively license past use of a patent, it can only waive infringement damages. *See, e.g.*, *Universal Oil Prods. Co. v. Vickers Petroleum Co. of Del.*, 19 A.2d 727, 729 (Del. Super. Ct. 1941) ("It is somewhat difficult to understand what is meant by a 'retroactive implied license.' A license in its very nature is prospective in operation."). Indeed, the '99 Agreement reflects this distinction. Section 2.12 governs infringement damages while Section 2.13 governs sublicensing and royalty payments. See Compl. Ex. A §§ 2.12, 2.13.

But what the Guidant Settlement actually said was that any such royalties "shall be waived and, *if payable,* paid by CORDIS." Weinberger Decl. Ex. 1 § 2(d) (emphasis added). The Fischells leave out this all-important "if" (ironically misrepresenting the provision they claim contained Cordis's misrepresentation). But it makes Cordis' alleged omission immaterial because it describes a situation that could never have happened. Pre-2004 "royalties" could never have become "payable" because it would have taken an infringement suit by Cordis to make them payable, and Cordis agreed not to file such a suit in the Guidant Settlement.

### 3.  The Fischells have not adequately pleaded reliance.

To plead reliance, the Fischells must allege that "but for" Cordis' actions, the Fischells would not have been damaged. *Weingarten v. Weingarten*, 560 A.2d 1243, 1248 (N.J. Super. Ct. App. Div. 1989) (citations omitted). Count IV contends that "[t]he Fischells relied on Cordis's [alleged misrepresentations], and did not make further attempts to acquire a complete copy of the Guidant [Settlement] from Cordis or to pursue royalties from Cordis or Guidant for Guidant's pre-February 2004 sales of royalty-bearing stents." Compl. ¶ 96. This statement does not plead "but for" causation. It does not allege that the Fischells failed to pursue "royalties" *because of* Cordis' alleged actions (nor could it, as only Cordis had the right to enforce the patents, *see* Compl. Ex. A § 2.12). Thus, Count IV fails for lack of reliance.

### 4. The Fischells were not damaged by the alleged misrepresentation.

Even if Cordis caused the Fischells not to "make further attempts to acquire a complete copy of the Guidant [Settlement] from Cordis or to pursue royalties from Cordis or Guidant" (Compl. ¶ 96), it is unclear how this entitles the Fischells to "the value of unpaid royalty payments for Guidant's pre-February 2004 sales." *Id.* ¶ 102. First and most basic, the Fischells never allege that such royalties actually were "payable" (which, as explained above, they were not), let alone explain how they could have been.

Second, the Fischells only suffered damages if they could have obtained royalties from Guidant in 2004. This is neither pleaded nor true. The Fischells could not have sued Guidant in 2004 because, under the '99 Agreement, Cordis had exclusive enforcement rights over the patents. Compl. ¶ 17 and Ex. A § 2.12. Thus, there are no damages from Cordis's alleged misrepresentation.

### 5. The Fischells' fraud claim is barred by the economic loss doctrine.

The Fischells cannot bring a fraud claim for what is actually an alleged breach of a contract. As discussed above, the economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." *Wong*, 2015 WL 6164036, at *3. While New Jersey state courts have not definitively established whether economic loss

doctrine applies to fraud claims, New Jersey federal "district courts have consistently applied the economic loss doctrine to fraud and negligent misrepresentation claims." *State Capital Title & Abstract Co. v. Pappas Bus. Servs., LLC*, 646 F. Supp. 2d 668, 678 (D.N.J. 2009) (citation omitted). "The pattern that has emerged in New Jersey decisional law is that claims for fraud in the performance of a contract, as opposed to fraud in the inducement of a contract, are not cognizable under New Jersey law." *Bracco Diagnostics Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557, 564 (D.N.J. 2002). There is no claim in this case for fraudulent inducement; rather, the Fischells' fraud allegations relate solely to Cordis's performance under the '99 Agreement. *See, e.g.*, Compl. ¶ 7. That agreement governs the parties' relationship as well as Cordis' enforcement and licensing rights. Thus, the Fischells' "fraud claim is not extrinsic to their underlying contract claims" and "is not cognizable as a separate cause of action." *See Bracco*, 226 F. Supp. 2d at 564.

### F. Count V (Unjust Enrichment)

In Count V, the Fischells claim unjust enrichment based on alleged benefits received by Cordis. This claim fails as a matter of law because the subject matter in dispute is already expressly governed by an enforceable contract. "[A] prerequisite to an implied contract claim for unjust enrichment is that there is no express contract concerning the same matter." *Russell-Stanley Corp. v. Plant*

*Indus., Inc.*, 595 A.2d 534, 550 (N.J. Super. Ct. Ch. Div. 1991) (citation omitted). Here, the Fischells are claiming that the '99 Agreement is an enforceable contract governing the rights underpinning their unjust enrichment claim. *See, e.g.*, Compl. ¶¶ 61–69 (Count I - Breach of Contract); ¶ 106 ("Plaintiffs . . . grant[ed] Cordis the right to use and sublicense Plaintiffs' patents"); ¶ 107 ("Cordis then used its *contractual* right to sub-license Plaintiffs' patents . . . as a bargaining chip.") (emphasis added). "In light of this express contract, there is no basis or need for plaintiff to pursue a quasi-contractual claim for unjust enrichment." *Winslow v. Corporate Express, Inc.*, 834 A.2d 1037, 1046 (N.J. Super. Ct. App. Div. 2003).

## CONCLUSION

For the foregoing reasons, the Court should dismiss this case.


Dated:  March 17, 2016                    Respectfully submitted,


                                          By*:   /s/ Donald A. Robinson*

                                              Donald A. Robinson, Esq.
                                              Keith J. Miller, Esq.
                                              ROBINSON MILLER LLC
                                              One Newark Center
                                              Newark, New Jersey 07102
                                              Telephone: (973) 690-5400
                                              drobinson@rwmlegal.com
                                              kmiller@rwmlegal.com

                                              Harold P. Weinberger, Esq.
                                              (*admitted pro hac vice*)
                                              Samantha V. Ettari, Esq.
                                              KRAMER LEVIN NAFTALIS
                                              & FRANKEL LLP
                                              1177 Avenue of the Americas
                                              New York, New York  10036
                                              Telephone: (212) 715-9100
                                              hweinberger@kramerlevin.com
                                              settari@kramerlevin.com

                                              *Attorneys for Defendant Cordis
                                              Corporation*

30