Donald A. Robinson, Esq.
Keith J. Miller, Esq.
ROBINSON MILLER LLC
One Newark Center
Newark, New Jersey  07102
(973) 690-5400
drobinson@rwmlegal.com
kmiller@rwmlegal.com

Harold P. Weinberger, Esq. (*admitted pro hac vice*)
Samantha V. Ettari, Esq.
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York   10036
(212) 715-9100
hweinberger@kramerlevin.com
settari@kramerlevin.com

*Attorneys for Defendant Cordis Corporation*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
                                                      :
TIM A. FISCHELL, ROBERT E.           :
FISCHELL, AND DAVID R. FISCHELL,  : Civil Action No. 3:16-cv-0928
                                                      : (PGS)(LHG)
                                                      :
                    Plaintiffs,                  :
                                                      :
vs.                                                   :
                                                      :
CORDIS CORPORATION,                  :
                                                      :
                    Defendant.                 :
_____:

**CORDIS CORPORATION'S REPLY MEMORANDUM
<u>IN FURTHER SUPPORT OF ITS MOTION TO DISMISS</u>**

## Table of Contents

**Page**

PRELIMINARY STATEMENT ...............................................................................1

ARGUMENT ........................................................................................................2

I.   Plaintiffs Have Failed to State A Claim For Breach of Contract Because the Terms Are Clear and Unambiguous .................................................................2

    A. The '99 Agreement Does Not Obligate Cordis to "Compel Royalties" ...............................................................................................2

    B. The '99 Agreement Does Not Require Cordis to Keep Records of Abbott's Unlicensed Sales or to Pay Royalties on Such Sales ..................5

II.  Plaintiffs' Conclusory Allegation of "Bad Faith" Cannot State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing................6

    A. Nonexistent Breaches of the '99 Agreement and the Guidant Settlement Cannot Sustain "Bad Faith" Allegations..................................6

    B. Plaintiffs' Remaining Conclusory Assertions of "Bad Faith" Are Insufficient to State a Claim for Breach of the Implied Covenant............8

III. The '99 Agreement Does Not Give Rise to Fiduciary Duties..........................11

IV. Plaintiff Has Failed to Adequately Allege Any Fraud Claim...........................13

V.  The '99 Agreement Bars Any Claim for Unjust Enrichment...........................14

CONCLUSION .....................................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alexander v. CIGNA Corp.*,
  991 F. Supp. 427 (D.N.J. 1998) ........................................................................11

*Alin v. America Honda Motor Co., Inc.*,
  2010 WL 1372308 (D.N.J. Mar. 31, 2010) .........................................................9

*Cordis Corp. v. Boston Scientific Corp.*,
  868 F. Supp. 2d 342 (D. Del. 2012), *aff'd in relevant part*, 504 F.
  App'x 922 (Fed. Cir. 2013) ..................................................................................6

*Crosspointe Developers, LLC v. Wegmans Food Markets, Inc.*,
  2013 WL 5975872 (N.J. Super. Ct. App. Div. Nov. 12, 2013) .......................4, 5

*Fenning v. American Type Founders, Inc.*,
  109 A.2d 689 (N.J. Super. Ct. App. Div. 1954) ..................................................9

*Glenz v. RCI, LLC*,
  2010 WL 323327 (D.N.J. Jan. 20, 2010) (Sheridan, J.) ....................................13

*Hassler v. Sovereign Bank*,
  644 F. Supp. 2d 509 (D.N.J. 2009), *aff'd*, 374 F. App'x 341 (3d
  Cir. 2010) ...........................................................................................................10

*Heidelberg Brewing Co. v. North American Service Co.*,
  26 F. Supp. 342 (E.D. Ky. 1939), *aff'd*, 111 F.2d 897 (6th Cir.
  1940) ....................................................................................................................4

*J.L. Davis & Associates v. Heidler*,
  622 A.2d 923 (N.J. Super. App. Div. 1993) ........................................................5

*Jermax, Inc. v. Baosteel America, Inc.*,
  2009 WL 4547576 (N.J. Super. Ct. App. Div. Dec. 4, 2009) .............................3

*Manahawkin Convalescent v. O'Neill*,
  85 A.3d 947 (N.J. 2014) ......................................................................................3

*Mercedes-Benz USA, LLC v. ATX Group, Inc.*,
  2009 WL 2255727 (D.N.J. July 27, 2009) ..........................................................5

*N.J. Department of Environmental Protection v. Occidental Chemical Corp.*,
  2012 WL 1392597 (N.J. Super. Ct. App. Div. Apr. 24, 2012)............................5

*Palisades Properties, Inc. v. Brunetti*,
  207 A.2d 522 (1965) ...........................................................................................10

*Pentech Pharmaceuticals, Inc. v. Par Pharmaceutical, Inc.*,
  2004 WL 2390088 (N.D. Ill. Oct. 21, 2004) ......................................................11

*Petron Scientech, Inc. v. Zaplatel*,
  2012 WL 5185589 (D.N.J. Oct. 18, 2012) ...........................................................5

*Professional Cleaning and Innovative Building Services, Inc. v. Kennedy Funding, Inc.*,
  245 Fed. App'x 161 (3d Cir. 2007) ..................................................................4, 5

*Reuben H. Donnelley Corp. v. Mark I Marketing Corp.*,
  893 F. Supp. 285 (S.D.N.Y. 1995) .....................................................................11

*Seidenberg v. Summit Bank*,
  791 A.2d 1068 (N.J. Super. Ct. App. Div. 2002) .................................................9

*State Capital Title & Abstract Co. v. Pappas Business Services, LLC*,
  646 F. Supp. 2d 668 (D.N.J. 2009).....................................................................14

*Syndia Corp. v. Lemelson Medical, Education, & Research Foundation*,
  Civ. A. No. 99-08241 (N.D. Ill. June 6, 2000)...................................................12

*Water Technologies Corp. v. Calco, Ltd.*,
  576 F. Supp. 767 (N.D. Ill. 1983).........................................................................4

*Watson v. City of East Orange*,
  815 A.2d 956 (N.J. 2003) .....................................................................................3

*Wilson v. Amerada Hess Corp.*,
    733 A.2d 1121 (N.J. 2001) .................................................................................8

*Wong v. Wells Fargo Bank N.A.*,
    2015 WL 6164036 (D.N.J. Oct. 20, 2015) .......................................................13

Defendant Cordis Corporation ("Cordis") respectfully submits this reply to the Fischells' Opposition (ECF Dkt. No. 49) ("Opp.") to Cordis' Motion to Dismiss (ECF Dkt. No. 41) ("Mem.") the May 14, 2015 Fischells' Amended Complaint (ECF Dkt No. 7) ("Compl.").[1]

PRELIMINARY STATEMENT

Plaintiffs' Opposition is based on three faulty premises.  The first is that the '99 Agreement required Cordis to take action against Abbott for infringement.  The '99 Agreement has no such requirement.  The second is that the '99 Agreement required Cordis to pay infringement damages if it chose not to pursue those damages from infringing non-parties. The '99 Agreement has no such requirement.  The third is that the Guidant Settlement obligated Cordis to pay any damages to the Fischells that may have accrued from Guidant's infringement of the Fischell Patents prior to the 2004 settlement.  The Guidant Settlement contains no such obligation.

These mischaracterizations infect all of Plaintiffs' causes of action.  Plaintiffs argue that Cordis has asked the Court to "adopt its interpretation of the agreement's terms as against all other reasonable interpretations" and to resolve "factual disputes."  Opp. at 2.  But it is the Fischells who urge an ambiguous interpretation of unambiguous provisions to create breaches where none exist.  A plain reading of these clear and unambiguous provisions proves fatal to each of the

---

[1]   Terms defined in the Mem. have the same meaning herein.

Fischells' claims.  Together with the case law, they require dismissal of every cause of action alleged in the Fischells' Amended Complaint.

## ARGUMENT

### I. Plaintiffs Have Failed to State A Claim For Breach of Contract Because the Terms Are Clear and Unambiguous

#### A. The '99 Agreement Does Not Obligate Cordis to "Compel Royalties"

Count I alleges that Cordis was obligated to "compel" "royalties" from Guidant prior to the Guidant Settlement in 2004 and from Abbott after 2012 and, barring such action, that Cordis must itself pay such "royalties" to the Fischells, *see* Compl. ¶ 66, but the Fischells do not specify any provision that would give rise to such obligations.  That is because none exists.  In an effort to read into the '99 Agreement obligations that are plainly not present, Plaintiffs argue that this is a "dispute about contract interpretation" and inappropriate for review on a motion to dismiss.  Opp. at 8.  To the contrary, the provisions in the '99 Agreement on which Plaintiffs base their breach of contract claim (and from which their other claims derive) are clear and unambiguous on their face.  *See* Mem. at 9-10.  Section 2.12 of the '99 Agreement provides:

> If either party becomes aware of any product or activity of any third party that involves infringement of any ROYALTY BEARING PATENT, then they shall promptly notify the other party.  CORDIS may, in its discretion, take whatever action it

believes to be necessary against such third party.

Section 2.13 of the '99 Agreement provides:

> As a result of the settlement of a lawsuit or for any other reason CORDIS shall have the right to sublicense any of the ROYALTY BEARING PATENTS to a third party as long as the appropriate one (1%) percent ROYALTY is paid to the FISCHELLS in accordance with the terms of the AGREEMENT.

Section 2.12 leaves no room for interpretation, as it is within Cordis' "discretion" to "take whatever action it believes to be necessary" against infringers.  The '99 Agreement does not impose any obligation on Cordis to sue third parties, such as Guidant or Abbott.  Likewise, § 2.13 contains no obligation on Cordis' part to make any payments itself to the Fischells if sublicensees decide to stop paying royalties and are infringing the patents.

Where contractual language "is plain and capable of legal construction, the language alone must determine the agreement's force and effect." *Manahawkin Convalescent v. O'Neill*, 85 A.3d 947, 958–59 (N.J. 2014) (citations and internal quotation marks omitted).  "When the terms of a contract are clear and unambiguous, there is no room for construction and the court must enforce those terms as written." *Jermax, Inc. v. Baosteel Am., Inc.*, 2009 WL 4547576, at *3 (N.J. Super. Ct. App. Div. Dec. 4, 2009) (holding that trial court erred in denying motion to dismiss where contract provisions were clear and unambiguous).  *See also Watson v. City of E. Orange*, 815 A.2d 956, 959 (N.J. 2003) (Long, J. dissenting) ("Put another way,

where a contract says "black", the parties cannot resort to surrounding circumstances to substitute "white.").  Even if the Fischells do not like it, "parties are bound by the contracts they make for themselves" and the "court may not rewrite the contract merely because one might conclude that it might well have been functionally desirable to draft it differently." *Crosspointe Developers, LLC v. Wegmans Food Markets, Inc.*, 2013 WL 5975872, at *2 (N.J. Super. Ct. App. Div. Nov. 12, 2013) (citations and quotation marks omitted) (affirming dismissal of complaint where contract provisions were clear and unambiguous as a matter of law).  Moreover, "[r]elief is not available merely because enforcement of a contract produces a result one side considers inequitable." *Id.* at *3.[2]

Plaintiffs rely on entirely inapposite case law to support their argument that the Court is somehow barred from relying on the plain meaning of provisions of the relevant agreements.  *Prof'l Cleaning and Innovative Bldg. Serv's, Inc. v.*

---

[2] In addition, as discussed in Cordis' opening papers, the alleged obligation to pursue litigation or pay royalties on third-party infringers' use of the Fischell Patents cannot be implied.  Mem. at 11.  *See Water Techs. Corp. v. Calco, Ltd.*, 576 F. Supp. 767, 772 (N.D. Ill. 1983) (dismissing a breach of contract claim based on a failure to sue an infringer because the patent license agreement contained no express provision requiring such suits); *see also Heidelberg Brewing Co. v. N. Am. Serv. Co.*, 26 F. Supp. 342, 343-44 (E.D. Ky. 1939), *aff'd*, 111 F.2d 897 (6th Cir. 1940) (rejecting breach of contract claim because an exclusive patent license, "with nothing more, falls far short of showing that the defendant guaranteed to prohibit persons over whom it had no control from infringing upon its patents or warranted that it would protect plaintiff's exclusive use against all the world." (citing *Martin v. New Trin. Lake Asphalt Co.*, 255 F. 93 (D.N.J. 1919)).  Plaintiffs' Opposition fails to address these decisions.

*Kennedy Funding, Inc.*, 245 Fed. App'x 161, 166-68 (3d Cir. 2007) concerned the adequacy of pleading fraud and misrepresentation, not breach of contract; moreover, the disputed term was characterized by the court as "nebulously defined in the contract." In *Mercedes-Benz USA, LLC v. ATX Group, Inc.*, 2009 WL 2255727, *7-8 (D.N.J. July 27, 2009) the court found that the plain meaning of the disputed provision did not "spring unambiguously from the page" and, as a result, deferred to plaintiff's interpretation of the ambiguous provision for purposes of a motion to dismiss. And in *Petron Scientech*, *Inc. v. Zaplatel*, 2012 WL 5185589, at *10 (D.N.J. Oct. 18, 2012), this Court did not even address whether the allegedly breached contract was clear and unambiguous. In this case, it is impossible to read within §§ 2.12 or 2.13 language that *compels* Cordis to litigate against a non-party infringer or makes Cordis liable for payments on infringing use of the Fischell Patents. As a result, Count 1 should be dismissed with prejudice.[3]

### B. The '99 Agreement Does Not Require Cordis to Keep Records of Abbott's Unlicensed Sales or to Pay Royalties on Such Sales

Plaintiffs' opposition regurgitates the bald allegation that the '99

---

[3]   Plaintiffs argue that applying the plain meaning of § 2.12 would somehow nullify the meaning of the immediately subsequent § 2.13. Opp. at 9 n.6. This is a red-herring. The two provisions can – and should be – read in harmony. "A basic principle of contract interpretation is to read the document as a whole in a fair and common sense manner." *Crosspointe*, 2013 WL 5975872, at *2 (citation and quotation marks omitted). The two cases cited by Plaintiffs, if anything, actually support *Cordis'* position. *See*, *N.J. Dep't of Envir. Prot. v. Occidental Chem. Corp.*, 2012 WL 1392597, at *17 (N.J. Super. Ct. App. Div. Apr. 24, 2012)

Agreement requires Cordis to keep records of Abbott's unlicensed sales (Opp. at 7), but the '99 Agreement does not impose any such obligation. Nowhere in the plain text of §§ 2.5, 2.6, 2.13 (or anywhere else in the '99 Agreement) is Cordis obligated to keep records of an infringer's sales – nor would such an obligation be practicable. Allegations that Cordis breached the '99 Agreement by failing to keep records of Abbott's unlicensed sales must be dismissed. Mem. at 12-13.[4]

## II. Plaintiffs' Conclusory Allegation of "Bad Faith" Cannot State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing

### A. Nonexistent Breaches of the '99 Agreement and the Guidant Settlement Cannot Sustain "Bad Faith" Allegations

Plaintiffs argue that they have adequately alleged a breach of the implied covenant of good faith and fair dealing by pleading Cordis' "bad faith" with

---

(court considered other agreement terms to elucidate ambiguous provision); *J.L. Davis & Assoc. v. Heidler*, 622 A.2d 923, 927 (N.J. Super. App. Div. 1993) (holding that contract terms were clear and unambiguous and the party's attempt to read provision as otherwise would nullify the disputed provision).

Section 2.13 does not nullify the plain reading of § 2.12 as the Fischells assert. The clear and unambiguous language of § 2.12 – providing Cordis with discretion concerning pursuit of infringers – does not obviate Cordis' obligations to pass through payments on sublicensee royalties under the '99 Agreement. There are no allegations that Cordis did not pay or pass through royalties, respectively, for its and sublicensees' use of the Fischell Patents.

[4]  Plaintiffs' assertion that Cordis misrepresented the holding in *Cordis Corp. v. Boston Sci. Corp.*, 504 F. App'x 922 (Fed. Cir. 2013) (Opp. at 10 n.7) is simply wrong. The trial court in that case held that the stents did not infringe based on three grounds: patent exhaustion under the license, no infringement based on design features, and patent invalidation. *See* 868 F. Supp. 2d 342 (D. Del. 2012).

allegations that Cordis (i) "exploited the Fischells and leveraged their patents to secure Abbott's balloon catheter stent technology" (Opp. at 10); (ii) did not tell them that it had allegedly agreed to make payments on Guidant's pre-settlement infringement (*id.* at 11); and (iii) failed to make those allegedly obligatory payments to the Fischells "even though Cordis has earned massive profits and continues to reap the benefits from the same sublicense and admits royalties are due to the Fischells" (*id.*).[5]  But, as explained above, Cordis was not obligated under § 2.12 to

---

The Federal Circuit affirmed that decision, vacating only "that portion of the district court's decision 'nullifying' (invalidating)" the patent claims.  504 F. App'x at 922.  *See* Mem. at 13-14.  In any event, the Court need not reach that issue to decide this motion.  Whether Abbott was correct in refusing to pay further royalties on the Fischell Patents is academic *because the '99 Agreement did not require Cordis to pursue litigation against Abbott*.

[5]   The Fischells' assertions that "Abbott and Cordis have earned billions of dollars from the 2004 Sublicense and the Fischells have now been wrongly excluded from the deal" (Opp. at 1) or that Cordis "continues to reap the benefits from the same sublicense" (*id.* at 11) are pure fiction.  While not germane to the disposition of this motion, the Court should be aware that Cordis' sales of stents with balloon catheters, which was made possible by the Guidant Settlement, resulted in payments of tens of millions of dollars in royalties by Cordis to the Fischells.  The Fischells had most certainly not been "removed from the deal" (Opp. at 5) or "exploited" (*id.* at 10).

Moreover, Cordis exited the coronary stent market entirely in 2011 – even before Abbott stopped paying royalties on the Fischell Patents – and, as such, for the past several years has had no revenue derived from use of the Fischell Patents.  *See* "Cordis Quits Stent Business, Dropping Cypher, Nevo DES", June 16, 2011, *Medscape*, available at http://www.medscape.com/viewarticle/744756 ("The first company to bring a drug-eluting stent (DES) to worldwide markets is . . . getting out of the coronary stent business altogether").

litigate against infringers.  Nor was it obligated under § 2.13 to pay royalties on infringers' use of the Fischell Patents.  Finally, there is no obligation, hidden or otherwise, in the Guidant Settlement requiring Cordis to make payments to the Fischells on account of Guidant's pre-settlement infringement of the Fischell Patents.  Those payments were expressly waived in § 2(d) of the Guidant Settlement.  *See* Weinberger Decl. Ex. 1.  Although Plaintiffs again suggest that these are "factual disputes" (Opp. at 14), they simply are not.

### B.   Plaintiffs' Remaining Conclusory Assertions of "Bad Faith" Are Insufficient to State a Claim for Breach of the Implied Covenant

Stripped of the allegations that Cordis exhibited bad faith or acted with improper motive by "breaching" the '99 Agreement and Guidant Settlement, Plaintiffs are left with nothing but the bald assertion that Cordis acted in "bad faith." Conclusory allegations such as those cannot sustain a claim for breach of the implied covenant.  *See* Mem. at 14-19.  "[A]n allegation of bad faith or unfair dealing should not be permitted to be advanced in the abstract and absent an improper motive. Without bad motive or intention, discretionary decisions that happen to result in economic disadvantage to the other party are of no legal significance."  *Wilson v. Amerada Hess Corp.*, 733 A.2d 1121, 1130-31 (N.J. 2001) (citations omitted).

Plaintiffs argue that it is sufficient to intone the words "bad faith" (Opp. at 10-11), but if that were the case, a claim for breach of the implied covenant could never be dismissed at this stage.  Nor do Plaintiffs' authorities support that sweeping

assertion. *See Alin v. Am. Honda Motor Co., Inc.*, 2010 WL 1372308 (D.N.J. Mar. 31, 2010) (plaintiff alleged more than just "bad faith"; allegations included knowing defects in the materials and products sold to plaintiff, misrepresentations concerning warranty, and viable breaches of express warranty provisions); *Seidenberg v. Summit Bank*, 791 A.2d 1068, 1072-73 (N.J. Super. Ct. App. Div. 2002) (plaintiffs alleged a laundry list of conduct intended to thwart the purpose of the agreement, none of which was expressly allowed or contemplated in the contract); *Fenning v. Am. Type Founders, Inc.*, 109 A.2d 689, 692, 694 (N.J. Super. Ct. App. Div. 1954) (after bench trial, court determined defendant had abandoned sale of plaintiff's patented devices – for which it had an exclusive license – in favor of soliciting sales of its own competing product). No material terms of the Guidant Settlement were concealed from the Fischells; as such, the decisions cited in support of their claim for breach of the implied covenant concerning concealment, intentional misleading assertions, "subterfuges and evasions," fraudulent kickbacks, or detrimental reliance are wholly inapposite. *See* Opp. at 11-12.[6]

Moreover, the Guidant Settlement was an appropriate exercise of Cordis' discretion under § 2.12 of the '99 Agreement. *See* Mem. at 15-16. A waiver

---

[6]   As previously noted, the implied covenant cannot erase Cordis' discretion or expand its enforcement obligations. Mem. at 18-19. *See Palisades Props., Inc. v. Brunetti*, 207 A.2d 522, 531 (1965) ("In every contract there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the

of damages for Guidant's prior infringement of the Fischell Patents in order for Cordis to gain access to Guidant's balloon catheter technology was not an improper motive under New Jersey law.  *Hassler v. Sovereign Bank*, which held that a plaintiff cannot "allege merely that its contractual partner exercised the discretion expressly afforded to it under the agreement to serve [its own] financial interests, or to maximize [its] profits, and that this decision worked to disadvantage the complaining party," is directly on point, and Plaintiffs' attempt to distinguish it on the basis that the *Hassler* "complaint failed to make *any* factual allegations that plausibly asserted that the defendant acted in bad faith" (Opp. at 13 n.9) merely underscores its applicability here.  644 F. Supp. 2d 509, 519 (D.N.J. 2009), *aff'd*, 374 F. App'x 341 (3d Cir. 2010) (citations and internal quotation marks omitted) (alterations in original).

Thus, even if Cordis settled with Guidant because it wanted access to technology that would help it sell more stents (from which the *Fischells would also benefit* because they were paid royalties on Cordis' sales) (Compl. ¶ 76), it is of no

---

contract.") (quotation and quotation marks omitted)).  Plaintiffs do not address this point or the authorities cited in Defendant's papers.

moment, because Cordis' motive of increased sales cannot support a "bad faith" allegation. Accordingly, Count II must also be dismissed.

## III.   The '99 Agreement Does Not Give Rise to Fiduciary Duties

As discussed in Cordis' opening papers, the contractual relationship between Cordis and the Fischells cannot be morphed into a fiduciary one. *See* Mem. at 19-22. There was simply no fiduciary relationship in this case. *See Alexander v. CIGNA Corp.*, 991 F. Supp. 427, 438 (D.N.J. 1998) ("fiduciary duties are not imposed in ordinary commercial business transactions" (citations omitted)); *see also Reuben H. Donnelley Corp. v. Mark I Mktg. Corp.*, 893 F. Supp. 285, 289 (S.D.N.Y. 1995) (patent case considered under New York law, stating "an arms-length licensor/licensee type relationship, without more, is not fiduciary in nature." (citations omitted)).

Plaintiffs cite only two cases involving a patent license in which a fiduciary relationship was held to be adequately alleged, both of which are distinguishable from the allegations in this case, are not binding on this Court, and, in any event, state general principles that are fully supportive of Cordis' position.[7] *See Pentech Pharms., Inc. v. Par Pharm., Inc.*, 2004 WL 2390088, *2 (N.D. Ill. Oct. 21, 2004) (Illinois District Court decision applying New York fiduciary duty law;

---

[7]  Other authority cited by Plaintiffs in support of this claim are completely unrelated to patent licenses and the arms-length relationship present here. Opp. at 22-23.

11

noting that a "fiduciary duty arises between parties only where there exists a relationship that constitutes something more than an 'arms length contractual arrangement'" (citation omitted)); *Syndia Corp. v. Lemelson Med., Educ., & Research Found.*, Civ. A. No. 99-08241, at 14-15 (N.D. Ill. June 6, 2000) (ECF Dkt. No. 49-2) (unpublished slip-opinion by the Illinois District Court; noting that "[g]enerally, a contract does not create a fiduciary relationship between the parties to [a] contract" but that "the degree of business experience between the parties" is a factor that might give rise to a fiduciary relationship). The Fischells have pleaded no facts showing that there was a discrepancy in the degree of business experience between themselves and Cordis or anything but an arms-length relationship between them. Nor could they, as the Fischells were sophisticated businessmen entering into an agreement that would ultimately net them millions upon millions of dollars. Moreover, the '99 Agreement precludes the reliance on representations or duties beyond those "expressly contained" in its text. *See* Compl. Ex. A § 6.8.

As previously discussed, the economic loss doctrine also bars the Plaintiffs' breach of fiduciary duty claim. *See* Mem at 19-21. Plaintiffs do not cite a single case to support their argument that it does not; indeed, they concede that a fiduciary duty breach claim is "extraneous to a defendant's contractual duties." *See* Opp. at 24-26. Nor do they persuasively distinguish the many cases cited by Cordis. For example, *Wong v. Wells Fargo Bank N.A.,* 2015 WL 6164036 (D.N.J. Oct. 20,

12

2015), which Plaintiffs attempt to distinguish on the grounds that "the pleadings were highly conclusory" (Opp. at 25) is directly on point for that very reason and *Glenz v. RCI, LLC*, 2010 WL 323327, at *5 (D.N.J. Jan. 20, 2010) (Sheridan, J.) – a decision by this Court – is also directly on point because it addressed arms-length contractual agreements and held that plaintiff's "breach of fiduciary duty claim is barred by the economic loss doctrine because it flows directly from the parties' contract."

## IV.   Plaintiff Has Failed to Adequately Allege Any Fraud Claim

Plaintiffs' fraud claim suffers from the same invented interpretation of the agreements at issue as its other purported causes of action.  Plaintiffs allege that they were misled into believing that Cordis had waived the Fischells' right to pre-2004 "royalties" from Guidant when, in fact, Cordis had assumed liability for such royalties. Compl. ¶¶ 92–94. They reiterate this fabrication in their Opposition. Opp. at 15-22.  First, they have failed (i) to plead that anyone at Cordis told them they must waive damages from Guidant's infringement in order for Cordis to enter into the Guidant Settlement and gain access to the balloon catheter technology; or (ii) to identify where in the Guidant Settlement Cordis assumed any obligation to pay to them the waived infringement damages.  *See* Mem. at 23-24.  Second, even if they had made such allegations, they could not support claims for fraud or fraudulent inducement, because, again, it was entirely in Cordis' discretion to waive Guidant's

13

pre-2004 infringement damages (not "royalties" as the Fischells call them, because pre-2004 Guidant and Cordis had no agreement and Guidant's use of the Fischell Patents could only have been an infringement) and enter into the Guidant Settlement under § 2.12 of the '99 Agreement. *See* Mem. at 25-27. Moreover, the Fischells' claim that Cordis hid from them that Cordis had agreed to pay for Guidant's pre-2004 infringements is utterly specious, as the Guidant Settlement says nothing of the kind. Mem. at 25-26. Accordingly, the case law cited in Plaintiffs' Opposition to support their purported reliance, damages, and materiality of an alleged deception are entirely irrelevant.[8]

## V. The '99 Agreement Bars Any Claim for Unjust Enrichment

Plaintiffs argue that they should be allowed the "alternative pleading" of an unjust enrichment claim, should the '99 Agreement's validity be challenged. Opp at. 26. No one is challenging the validity or authority of the '99 Agreement.

---

[8] The claim is also barred by the economic loss doctrine. As noted above, the Fischells have not actually pleaded a claim for fraudulent inducement and any attempt to do so would be futile. The cases cited by Plaintiffs do not alter the fact that, where claims arise out of contracts, New Jersey federal "district courts have consistently applied the economic loss doctrine to fraud and negligent misrepresentation claims." *State Capital Title & Abstract Co. v. Pappas Bus. Servs., LLC*, 646 F. Supp. 2d 668, 678 (D.N.J. 2009) (citation omitted). *See* Mem. at 27-28.

As such, Plaintiffs essentially concede that this claim should be dismissed.

## CONCLUSION

For the foregoing reasons and those stated in Cordis' Memorandum in Support of the Motion to Dismiss, the Court should dismiss this case.

Dated:  April 25, 2016                    Respectfully submitted,

By:   */s/ Donald A. Robinson*

Donald A. Robinson, Esq.
Keith J. Miller, Esq.
ROBINSON MILLER LLC
One Newark Center
Newark, New Jersey 07102
Telephone: (973) 690-5400
drobinson@rwmlegal.com
kmiller@rwmlegal.com

Harold P. Weinberger, Esq.
(*admitted pro hac vice*)
Samantha V. Ettari, Esq.
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
1177 Avenue of the Americas
New York, New York  10036
Telephone: (212) 715-9100
hweinberger@kramerlevin.com
settari@kramerlevin.com

*Attorneys for Defendant Cordis
Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 25, 2016, I caused a copy of the above Reply Memorandum to be filed and served upon all counsel of record via the Court's electronic filing system.

<u>  /s/ Donald A. Robinson   </u>
Donald A. Robinson