UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TIM A. FISCHELL, ROBERT E. FISCHELL, AND DAVID R. FISCHELL,<br><br>*Plaintiffs*,<br><br>v.<br><br>CORDIS CORPORATION,<br><br>*Defendant*,<br><br>ABBOTT LABORATORIES AND ABBOTT CARDIOVASCULAR SYSTEMS INC.,<br><br>*Intervenors*. | Civil Action No.: 3:16-cv-00928 (PGS)(LHG)<br><br><br><br>MEMORANDUM AND ORDER |

This matter is before the Court on a Motion by plaintiffs to strike defendant's and intervenor's affirmative defenses of patent invalidity and unenforceability, (ECF No. 206).

I

In 1999, Tim A. Fischell, Robert E. Fischell, and David R. Fischell (hereinafter "plaintiffs") entered into a patent royalty agreement with defendant Cordis Corporation (hereinafter "Cordis"). (Third Am. Compl. ("TAC"), ECF No. 160, at ¶ 5). Pursuant to the assignment agreement, plaintiffs provided Cordis with the ownership rights to use and sell certain coronary stent patents. (*Id.* at ¶ 5). In exchange, Cordis agreed to protect plaintiffs' intellectual property rights and to pay plaintiffs royalties from the products made, sub-licensed, or sold by Cordis. (*Id.* at ¶ 5). Under the 1999 agreement, Cordis promised to pay a 1% royalty on the Royalty Bearing Products, "so long as a court of competent jurisdiction has not held such claim invalid or unenforceable in an unappealed or unappealable decision." (1999 Agreement, ECF No. 160-1 at §§ 1.2, 1.6). Cordis also gained the right to sub-license the Fischell patents,

1

"as long as the appropriate (1%) percent ROYALTY is paid to the FISCHELLS in accordance with the terms of the AGREEMENT." (*Id.* at § 2.13). Finally, Cordis gained the right to initiate legal action against any potential infringer of any of the Royalty Bearing Patents that had been assigned or licensed to it by plaintiffs. (TAC at ¶ 28). In 2001, the Fischells and Cordis entered into an agreement that modified the royalty rates, but otherwise left the 1999 patent royalty agreement in full effect. (TAC at ¶ 26).

In late 2002 or early 2003, plaintiffs informed Cordis that certain stents manufactured by Guidant infringed Fischell patents that had been assigned or licensed to Cordis. (*Id.* at ¶ 31). In 2004, Cordis and Guidant entered into a Settlement and Release agreement, which resolved a pending arbitration, wherein Guidant claimed Cordis had infringed on Lam/Lau patents, and Cordis claimed that Guidant had infringed on Fischell patents. (2004 Guidant Settlement Agreement, ECF No. 160-3, at 2-3). As a result of the 2004 Guidant Settlement Agreement, Cordis was to receive a royalty-free license to the Lam/Lau patents, and Guidant was to receive a license to the Fischell patents, though it was required to pay a royalty on these patents to Cordis, who then sent these payments to the Fischells. (*Id.* at 3, 4 ¶ 2(c), (d)). In 2006, Guidant sold its cardiology division to Abbott. (TAC at ¶46). Accordingly, "Abbott sent royalties to Cordis for 'passthrough' payment to the Fischells for a portion of Abbott's manufacture and sale of various stents, including Abbott's Vision, Xience (the drug-eluting variant of the Vision stent), and Zeta stents, among others." (*Id.*) During this time, Abbott manufactured and sold certain stents to Boston Scientific Corporation ("BSC"), who then re-sold the stents under its own label. (*Id.* at ¶ 48).

In 2010, Cordis sued BSC in the U.S. District Court for the District of Delaware for selling a certain stent, identified as the Promus stent, that it alleged infringed on the Fischells'

stent patents that plaintiffs had assigned to Cordis. (*Id.* at ¶ 53). In that litigation, Cordis asserted three Fischell patents: U.S. Patent No. 6,086,604 ("the '604 patent"), U.S. Patent No. 6,716,240 ("the '240 patent"), and U.S. Patent No. 6,547,817 ("the '817 patent"). (*Id.* at ¶ 54). In response, BSC asserted numerous defenses, including invalidity and noninfringement of the asserted claims. *Cordis Corp. v. Bos. Sci. Corp.*, 868 F. Supp. 2d 342, 344 (D. Del. 2012). There, the court granted summary judgment in part, and denied summary judgment in part to BSC. In denying summary judgment based on invalidity, the court, with respect to the '817 patent, nullified (or invalidated) dependent claims 14-16. *Id.* at 357. Additionally, the court granted summary judgment in favor of BSC by determining that Cordis could not show that the Promus patent infringes. *Id.* at 358. On appeal, the Federal Circuit affirmed in part and vacated in part the judgment of the district court, without opinion. *Cordis Corp. v. Bos. Sci. Corp.*, 504 F. App'x 922, 922 (Fed. Cir. 2013). The court affirmed the district court's conclusion that Cordis could not show BSC's Promus patent infringes, but "vacate[d], however, the portion of the district court's decision 'nullifying' (invalidating) dependent claims 14-16 of U.S. Patent No. 6,547,817." *Id.*

The '817 patent shares the same specifications as the '856 and '452 patents, as the Promus stent "share[s] the same metal stent architecture" as the Xience and Vision stents. (Pl. reply br. at 12, Abbott br. at 20). Based on the 2012 Delaware ruling, Abbott stopped paying Cordis royalties for pass-through to the Fischells in 2012 for the Vision and Xience and bare metal stents. (TAC at ¶ 57; *see also* ECF No. 160-5, at 2). On December 21, 2012, a representative from Cordis wrote to Abbott, and confirmed that the Vision and Xience stents were considered "royalty-bearing" pass-through patents pursuant to the Guidant License, and that failure to pay plaintiffs royalties for the sales of these stents amounted to non-compliance with the Guidant

License. (TAC at ¶ 59). However, according to the complaint, Abbott has failed pay royalties for sales of the royalty-bearing stents, and Cordis has done little else to compel Abbott to pay. (*Id.* at ¶¶ 62-63).

Plaintiffs brought the present case against Cordis in 2015, and in 2016, Abbott moved to intervene, asserting patent-law defenses to the breach of contract claims plaintiffs are asserting against Cordis. (ECF No. 66). On May 30, 2017, to streamline the case, plaintiffs, Cordis, and Abbott entered into a Stipulation, wherein they agreed to limit plaintiffs' asserted patent claims to three U.S. patents from three distinct patent families, the 8,157,856 (the "'856 patent"), the U.S. Patent No. 8,747,452 (the "'452 patent") and U.S. Patent No. 6,699,278 (the "'278 patent"). (Order, ECF No. 111). The Stipulation sets forth the issues that were to be determined and resolved, including patent infringement, validity, and enforceability. (*Id.*)

Plaintiffs filed the present motion to strike defendant's and intervenor's affirmative defenses of patent invalidity and unenforceability on May 23, 2018. (ECF 207). Plaintiff argues that Cordis and Abbott should be estopped from challenging the validity of the Fischell patents under the doctrine of "assignee estoppel" because Cordis has owned the patents at issue since 2001, and thus is the assignee of the Fischell patents. (Pl. Br. at 9, ECF No. 207). Plaintiff further argues that Abbott waived and released the defenses of invalidity and unenforceability in the 2004 Settlement. (Pl. Br. at 13). In response, Cordis and Abbott argue that the parties expressly stipulated that Abbott and Cordis could challenge the patents' validity and enforceability, and have been litigating those issues for a year. Cordis and Abbott also argue that "assignee estoppel" does not bar them from challenging patent validity and enforceability, as Abbott is a licensee, and not an assignee, and Cordis is no longer assignee of the asserted patents. Additionally, Cordis and Abbott argue that the entire doctrine of assignee estoppel is in "serious

doubt," and the instances that courts have applied it are dissimilar to the dispute here, and as such, this Court should decline to apply it in the present situation. (Def. Br. at 16-17; Abbott Br. at 16-18). Finally, Cordis and Abbott argue that the 2004 Settlement does not bar the Abbott from challenging the validity and enforceability of the asserted patents, as plaintiffs were not a party to that agreement. (Def. Br. at 25-27; Abbott Br. at 21-24).

II

Under Rule 12(f) of the Federal Rules of Civil Procedure, "[t]he Court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The Court may act either "on its own" or on a motion by a party. *Id.* at 12(f)(1)-(2). "The purpose of a motion to strike is to simplify the pleadings and save time and expense by excising from a plaintiff's complaint any redundant, immaterial, impertinent, or scandalous matter which will not have any possible bearing on the outcome of the litigation." *Corradetti v. Sanitary Landfill, Inc.*, 912 F. Supp. 2d 156 (D.N.J 2012) (quoting *Garlanger v. Verbeke*, 223 F. Supp. 2d 596, 609 (D.N.J. 2002)). "[M]otions to strike are usually 'viewed with disfavor' and will generally 'be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues.'" *Gray v. Bayer Corp.*, 2010 U.S. Dist. LEXIS 33040, at *2 (D.N.J. Mar. 31, 2010) (citing *Garlanger*, 223 F. Supp. 2d at 609). In fact, "Rule 12(f) should be construed strictly against striking portions of the pleading on grounds of immateriality and if the motion is granted at all, the complaint should be pruned with care." *Morgan Home Fashions, Inc. v. UTI*, U.S. Inc., 2004 U.S. Dist. LEXIS 13412, at *8 (D.N.J. Feb. 9, 2004).

Motions to strike challenge "the legal sufficiency of the pleading" and are governed by "the same standards as a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6)." *In re*

*Gabapentin Patent Litig.*, 648 F. Supp. 2d 641, 647-48 (D.N.J. 2009). In determining "whether Defendants' affirmative defenses are insufficient, the Court must accept all factual allegations in the Answers as true, construe the Answers in the light most favorable to Defendants, and determine whether, under any reasonable reading of the pleadings, Defendants may be entitled to relief." *Id.* (citing *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).

III

Plaintiffs argue that Cordis and Abbott must be estopped from challenging the validity of the Fischell's patents because Cordis has owned the patents at issue since 2001. (Pl. br. at 9). Plaintiffs also argue Abbott, as licensee of Cordis, is precluded from asserting these defenses because Abbott is only asserting affirmative defenses to the Fischells' claims against Cordis in this case by standing in Cordis's shoes, and the same assignee estoppel that bars Cordis from bringing these defenses also bars Abbott. (*Id.* at 11). In response, both Cordis and Abbott argue that plaintiffs stipulated that Cordis and Abbott may present invalidity and unenforceability defenses, and thus the Stipulation governs, as the parties have been litigating these issues for a year. Further, Cordis argues that assignee estoppel is inapplicable because Cordis is no longer the owner of the asserted patents, and the validity of the doctrine of assignee estoppel is "in serious doubt." (Def. br. at 16, n.2). Abbott argues that Cordis is a licensee, not an assignee of the patents, and thus the doctrine of assignee estoppel is inapplicable. (*See* Def. br. at 16, Intervenor br. at 16).

"Assignee estoppel is an equitable doctrine which, under appropriate circumstances, bars the assignee of a patent from contesting the validity of the assigned patent." *Slip Track Sys. v. Metal Lite, Inc.*, 113 F. App'x 930, 933 (Fed. Cir. 2004); *see also Macom Tech. Sols. Holdings, Inc. v. Infineon Techs. AG*, No. 2:16-02859, 2017 U.S. Dist. LEXIS 121806, at *6 (C.D. Cal.

Aug. 2, 2017) ("*Macom*"). "For example, circumstance may warrant application of the doctrine to prevent an assignee from avoiding royalty payments otherwise due under an assignment contract by challenging the validity of the assigned patent." *Id.* (first citing *Baladevon, Inc. v. Abbott Lab.*, 871 F. Supp. 89, 96 (D. Mass. 1994); then citing *Sybron Transition Corp. v. Nixon*, 770 F. Supp. 803, 811-12 (W. D.N.Y. 1991)).

Abbott and Cordis rely on the Supreme Court's decision in *Lear, Inc. v. Adkins*, 395 U.S. 653 (1969) to argue that assignee estoppel is inapplicable. There, a licensee of a patent (Lear) brought suit against the licensor (Adkins); the issue before the Court was whether a licensee could challenge the validity of licensed-patent, and whether the licensee was required to pay the agreed to royalties regardless of the validity of the licensed patent. *Lear*, 395 U.S. at 656. The Court recognized that the "judicial efforts to accommodate" competing notions of patent law and contract law had led to the "uncertain status of licensee estoppel in the case law." *Id.* at 689; *see also Macom*, 2017 U.S. Dist. LEXIS 121806, at *6-7. The Court explained, "[o]n the one hand, the law of contracts forbids a purchaser to repudiate his promises simply because he later becomes dissatisfied with the bargain he has made. On the other hand, federal law requires that all ideas in general circulation be dedicated to the common good unless they are protected by a valid patent." *Id.* at 688. Faced with "this basic conflict in policy, both this Court and courts throughout the land have naturally sought to develop an intermediate position . . . [t]he result has been a failure." *Id.* at 668; *see also Macom*, 2017 U.S. Dist. LEXIS 121806, at *6-7. Consequently, the Court decided to abolish the doctrine of licensee estoppel altogether, explaining:

> Surely the equities of the licensor do not weigh very heavily when they are balanced against the important public interest in permitting full and free competition in the use of ideas which are in reality a part of the public domain. Licensees may often be the

7

only individuals with enough economic incentive to challenge the patentability of an inventor's discovery. If they are muzzled, the public may continually be required to pay tribute to would-be monopolists without need or justification. We think it plain that the technical requirements of contract doctrine must give way before the demands of the public interest in the typical situation involving the negotiation of a license after a patent has issued.

*Id.* at 670-71.[1]

"Although *Lear* did not squarely address assignee estoppel as compared to licensee estoppel, '[t]he distinction between licensee estoppel and assignee estoppel [has not always been] logical.'" *Macom*, 2017 U.S. Dist. LEXIS 121806, at *8 (quoting *Coast Metals, Inc. v. Cape*, No. 78-276, 1979 U.S. Dist. LEXIS 7798, at *4 (D.N.J. Dec. 24, 1979)). "Thus, Justices White and Blackmun have observed that it is 'arguably inconsistent' with *Lear* to prevent an assignee from challenging patent validity." *Macom*, 2017 U.S. Dist. LEXIS 121806, at *8 (quoting *Brown Transp. Corp. v. Atcon, Inc.*, 439 U.S. 1014, 1020 (1978) (dissenting from the denial of certiorari of *Sears, Roebuck & Co. v. Roberts*, No. 78-26, 573 F.2d 976 (CA7 1978)).

Since *Lear*, courts have had little occasion to further develop or discuss the doctrine of assignee estoppel. The courts that have analyzed the doctrine of assignee estoppel are split in its

---

[1] To fall under the *Lear* doctrine and assert that a patent's invalidity excuses a contractual royalty obligation, the court in *Studiengesellschaft Kohle, M.B.H. v. Shell Oil Co.*, 112 F.3d 1561, 1568 (Fed. Cir. 1997) required a licensee to (1) "actually cease[] payment of royalties, and (ii) provide[] notice to the licensor that the reason for ceasing payment of royalties is because it has deemed the relevant claims to be invalid." *Shell*, 112 F.3d at 1568. Plaintiffs reliance on *Shell* to conclude that "that a party can obligate itself to pay royalties regardless of a patent's validity," and thus "patent licensing law bars Cordis and Abbott from asserting patent invalidity as a defense to their failure to pay royalties that were due before they first raised invalidity as a defense to their royalty obligations" is misguided. (Pl. br. at 23-24). In *Shell*, the license agreement did not make payment of royalties contingent upon validity of the patent at issue. *Shell*, 112 F.3d at 1567. Here, the 1999 Agreement expressly states that Cordis would pay a royalty on the Royalty Bearing Patents, "so long as a court of competent jurisdiction has not held such claim invalid or unenforceable in an unappealed or unappealable decision." (1999 Agreement, ECF No. 160-1 at §§ 1.2, 1.6). Additionally, Abbott followed the Federal Circuit's *Shell* decision in order to fall under the *Lear* doctrine, by ceasing payment of royalties and notifying Cordis that it had deemed the claims invalid. (*See* ECF No. 160-5, at 2 (E-mail from Abbott Rep. to Cordis Rep. explaining that Abbott believed no further royalties were due based on the 2012 Delaware ruling)).

8

application in light of *Lear*. Most recently, the court in *Macom* declined to strike invalidity defenses based on "the foregoing weight of uncertainty about the state of the doctrine." *Macom*, 2017 U.S. Dist. LEXIS 121806 at *8. There, the court explained that in instances where courts distinguish *Lear* and apply assignee estoppel, they do so by

> noting that an assignment, unlike a license, precludes the assignor from exacting "'tribute' until the patent rights are returned to him." *Roberts v. Sears, Roebuck & Co.*, 573 F.2d 976, 982 (7th Cir. 1978); *see also Sybron*, 770 F. Supp. at 811 ("The assignor thus has nothing left, and has no legal basis to exact 'tribute' from the public."). Courts also note the inequity of permitting an assignee to obtain the benefits of their bargain while avoiding payment of due consideration. *See Sybron*, 770 F.Supp. at 811; *Coast Metals, Inc. v. Cape*, No. 78-cv-276, 1979 U.S. Dist. LEXIS 7798, at *4 (D.N.J. Dec. 24, 1979) (assignee was "seeking to repudiate its agreement and avoid payments due the inventor").

*Id.* The court distinguished *Macom* from the above referenced cases, explaining the assignment did not leave the assignor with "nothing," and instead, the assignor "retains some rights to prosecute infringers as well as practice the . . . Patents . . . Additionally, [the assignor] does not contend here that [assignee] is asserting invalidity to avoid royalty payments or its obligations to pay consideration . . . ." *Macom*, 2017 U.S. Dist. LEXIS 121806, at *8.[2]

In *Coast Metals, Inc. v. Cape*, relied on by plaintiffs, defendant-assignors moved for summary judgment after assignee-plaintiff sought to invalidate the patent, because the assignee, "as owner of the patent by assignment is estopped from challenging the validity of the patent." No. 78-276, at *4-5. The court first noted that prior courts' decisions on the doctrine of assignee estoppel did "not permit easy interpretation." *Coast Metals, Inc.*, 1979 U.S. Dist. LEXIS 7798, at *9. Instead, the court distinguished from *Lear* and *Sears* by holding assignee estoppel

---

[2] The *Macom* court also concluded that "the issue [of assignee estoppel] is not well suited to resolution at the pleading stage, [because] resolution of the doctrine may require the Court to weigh not only the equities of each parties' contentions about the Purchase Agreement and License Agreement, but also the circumstances under which those agreements were negotiated and evidence of each parties' performance." *Macom*, 2017 U.S. Dist. LEXIS 121806, at *10.

applicable because, unlike those cases, the assignee in *Coast Metals* itself was bringing a declaratory judgment action to declare its own patent invalid, whereas "[i]n *Lear* and *Sears* <u>the claim of patent invalidity was a defense</u>." *Coast Metals, Inc. v. Cape*, 1979 U.S. Dist. LEXIS 7798, at *11-12 (emphasis added).

Based on the uncertainty involved in the applicability of the doctrine of assignee estoppel, the Court declines to apply it, and therefore, declines to strike Cordis and Abbott's affirmative defenses of patent invalidity and unenforceability. In this case, there is uncertainty as to whether Cordis is even an assignee, as Cordis asserts that the patents are now owned by Cardinal Health Switzerland. (*See* Cordis br., ECF No. 216, at 15 n.2; *see also* ECF No. 213-3). Further, the case at hand presents an issue distinguishable from the cases that have applied assignee estoppel. The 1999 Agreement explicitly states that the royalty agreement was contingent upon Cordis practicing valid claims: "where a VALID CLAIM of a royalty bearing patent is practiced by CORDIS, CORDIS shall pay the FISCHELLS a royalty . . . ." (1999 Agreement, at § 2.1). The 1999 Agreement defines a valid claim as "a claim of an unexpired patent so long as a court of competent jurisdiction has not held such claim invalid or unenforceable in an unappealed or unappealable decision." (1999 Agreement, ECF No. 160-1 at §§ 1.2, 1.6).

Here, the 1999 Agreement expressly sets out that Cordis may cease paying royalties for patent bearing products where court has held a claim invalid or unenforceable in an unappealed or unappealable decision. In 2012, Cordis defended the Fischell patents in the District of Delaware against BSC's claims that the '817 patent was invalid. In that case, Cordis was unsuccessful, as the court held that certain claims in the '817 patent were "nullified" and that BSC's Promus patent did not infringe. While the Federal Circuit vacated the portion of district

court's decision that "nullified" the certain claims of the '817 patent, it upheld the portion finding that the Promus patent did not infringe upon the Fischell patent, thus in this respect, Cordis defended the Fischell patents and lost. It now seeks to get out of the contract it had entered into with plaintiffs, as the validity of the patents it owns and continues to pay a royalty is in question. This is evident because the '817 patent shares the same specification as the '856 and '452 patents, and also shares the same metal stent structure as the Xience and Vision stents. It was based on these issues that Abbott ceased paying the royalties to Cordis. In this instance, it is not fair to harm Cordis, who has acted in conformance with the 1999 Agreement by defending the Fischell patents, and lost. Here, the assignment agreement explicitly states that the assignee – Cordis – shall only pay royalties for valid claims. Thus the agreement allows Cordis to challenge the validity of the patents it owns, and accordingly, the defenses of patent invalidity and unenforceability may be raised. Cordis may pursue these defenses, at least through discovery.

Unlike in cases where an assignee now controls the patent and is "seeking to repudiate its agreement and avoid payments due the inventor," here, Cordis has stopped paying royalties to Fischell only after Abbott, the licensee of the patents, stopped paying royalties to it. Thus, Cordis is not proactively challenging the patents; instead, they are defending against making a payment for patents whose validity and enforceability have been questioned. Further, allowing Cordis and Abbott to raise the defenses of patent invalidity and unenforceability is in line with the policy set forth in *Lear*: if a patent may be invalid, it is not fair to treat the patent as if it is valid, and allow the plaintiffs to continue to receive a royalty when there may be no valid reason for preferential treatment.[3]

---

[3] Moreover, Abbott is a party to the case based on its own significant interest in this case, as the defenses Cordis asserts of patent invalidity and unenforceability are for the products Abbott has licensed and produces. Any judgment potentially invalidating or holding a patent licensed to Abbott will directly affect Abbott. Here, it is clear that the doctrine of assignee estoppel does not apply to Abbott because Abbott not an assignee, but is clearly a

11

Finally, the Court finds it significant that the parties entered into a Stipulation on May 30, 2017, after both parties met, conferred, and agreed that "that they would propose to the Court that the issues of <u>patent infringement, validity, and enforceability</u> in this case can be most efficiently resolved by [limiting the patents at issue in the case]." (Stipulation, ECF No. 111). The Stipulation here recognized that validity and infringement were both at issue. The Stipulation further stated:

> if the Fischells <u>establish in this action</u>, via an unappealed or unappealable final determination, <u>that an Abbott product practices</u> (i.e., infringes but for a license) <u>an Asserted Fischell Claim</u>, then it shall be established that the Abbott product is a Royalty Bearing Product as defined in the 1999 Fischell-Cordis Agreement and a Licensed Product as defined in the 2004 Cordis-Guidant Agreement, <u>unless Abbott or Cordis establishes</u>, via an unappealed or unappealable final determination, <u>that the Asserted Fischell Claim is invalid or unenforceable</u>.

(*Id.*) Thus, the Stipulation clearly sets forth that the issues that were to be determined and resolved included patent infringement, validity, and enforceability. It was clear to the Court and clear to the parties that the issues of validity and enforceability of the patents were to be resolved. The parties and the Court relied on this Stipulation, and proceeded for over a year under the belief that the patent issues to be resolved during the course of this litigation were validity and enforceability. Accordingly, plaintiff's motion to strike Abbott and Cordis's affirmative defenses of invalidity and unenforceability is denied.

IV

Plaintiff additionally argues that Abbott has waived arguments that the Fischell patents are invalid or unenforceable because these defenses were waived and released in the 2004 Guidant Settlement. In the Settlement Agreement, the parties first acknowledged:

---

licensee of the patents. Further, any licensee estoppel arguments against Abbott must be rejected, as the Supreme Court has abrogated the doctrine of licensee estoppel in *Lear*.

> that this Agreement is being executed in settlement and compromise of the Lam/Lau Dispute and the Fischell Dispute and that nothing in this Agreement shall be construed as an admission by any party of any wrongdoing, or of the validity or invalidity of any position taken or proposed to be taken by or against the party in any past, present, or future dispute or proceeding.

(SA, ECF No. 160-3, at ¶ 1). The Settlement Agreement also contains the following release:

> J&J, on the one hand, and GUIDANT, on the other hand, do hereby for themselves and their respective legal successors and assigns, release and forever discharge each other and their respective shareholders, officers, directors, employees, agents, attorneys, customers, distributors, officials, legal successors and assigns of and from any and all claims, demands, damages, debts, liabilities, accounts, reckonings, obligations, costs, expenses, liens, actions and causes of action of any kind and nature whatsoever, whether now known or unknown, suspected or unsuspected, which either now has, owns or holds or at any time heretofore had ever owned or held, <u>based on or arising out of or relating to the Lam/Lau Dispute and the Fischell Dispute</u>, all of which are referred to hereinafter as the "Released Matters", including, without limitation, (i) any and all disputes concerning the infringement, validity or enforceability of the Lam/Lau Patents or the Fischell Patents . . . .

(*Id.* at ¶ 3). The "Fischell Dispute" was defined as "J&J [identified as Cordis' parent company at the time of the Settlement] has alleged that certain GUIDANT products infringe upon U.S. Patent No. 6,547,817BI issued April 15, 2003 to Fischell et. al. and assigned to CORDIS (the "Fischell Dispute")." (*Id.* at 2). Because the present dispute clearly does not arise out of the "Fischell Dispute," as defined by the 2004 Settlement Agreement, this release provision is inapplicable.

The 2004 Settlement Agreement also states, "[t]here are no other third-party beneficiaries of this Agreement." (*Id.* at ¶ 12). "Under New York law, such a provision negates the ability of a third-party to rely on the contract for any purpose." *Comcast Cable Communs., LLC v. Sprint Communs. Co., LP*, 203 F. Supp. 3d 499, 542 (E.D. Pa. 2016) (citing *India.com Inc. v. Dalal*, 412 F.3d 315, 321-322 (2d Cir. 2005) ("Where a provision exists in an agreement expressly negating an intent to permit enforcement by third parties, that provision is decisive.")). Because

13

plaintiff was not a party to the 2004 Settlement Agreement, it may not attempt to enforce any provision of the contract. Thus, the Settlement Agreement conclusively states that the release only governs claims arising out of the "Fischell Dispute," as defined above, between Cordis and Guidant/Abbott, and Cordis and Abbott may bring their affirmative defenses of patent invalidity and unenforceability.[4]

## Conclusion

Plaintiffs' motion to strike defendant's and intervenor's affirmative defenses of patent invalidity and unenforceability is DENIED.

---

[4] Plaintiff's reliance on *Hemstreet v. Spiegel, Inc.*, 851 F.2d 348, 349 (Fed. Cir. 1988) and *Baseload Energy, Inc. v. Roberts*, 619 F.3d 1357, 1363 (Fed. Cir. 2010) is misplaced: "each case must be examined on its own facts in light of the agreement between the parties. In the context of settlement agreements, as with consent decrees, clear and unambiguous language barring the right to challenge patent validity in future infringement actions is sufficient, even if invalidity claims had not been previously at issue and had not been actually litigated." *Baseload Energy, Inc.*, 619 F.3d. at 1363. As explained above, the release and settlement agreement is clear and unambiguous, however it applied to Cordis and Guidant/Abbott, and their ability to challenge the validity of Fischell patent's arising out of the "Fischell Dispute," a dispute involving Guidant products infringing on U.S. Patent No. 6,547,817B1 issued to plaintiffs and assigned to Cordis. The present dispute clearly does not arise out of the "Fischell Dispute," thus this release provision is not applicable.

**ORDER**

This matter, having been brought before the Court on plaintiffs' motion to strike defendant's and intervenor's affirmative defenses of patent invalidity and unenforceability [ECF No. 206], and the Court having considered the briefs and submissions of the parties; and having heard oral argument; and for good cause having been shown;

IT IS on this 29th day of November, 2018;

**ORDERED** that plaintiffs' motion to strike defendant's and intervenor's affirmative defenses of patent invalidity and unenforceability (ECF No. 206) is DENIED.

_____
PETER G. SHERIDAN, U.S.D.J.